Billy DILLARD v. STATE of Arkansas

CR 93-47                                                855 S.W.2d 909

Supreme Court of Arkansas
Opinion delivered June 14, 1993

*O. Byrum Hurst, Jr.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Appellant Billy Dillard raises four points of error in this appeal from his conviction of the crime of rape, resulting in a sentence of forty-five years in the Department of Correction. We affirm the judgment.

## I

Appellant's second point challenges the sufficiency of the evidence, which we deal with first. The prosecutrix testified that on May 30, 1992, she and her boyfriend were watching television when the appellant, whom they both knew, arrived. She had seen the appellant socially three or four times previously. She testified that while she and the appellant were on an errand for her boyfriend the appellant grabbed her by the hair and put a knife to her throat. He then drove to an abandoned house where she was raped and sexually assaulted.

Later at a dwelling in Hot Springs she said she was raped again, bound hand and foot and left while the appellant took her car to hide it. While appellant was away she managed to free herself and go next door, where she reported the rape and the police were called.

The appellant readily admitted the events of the evening but insisted that the sexual intercourse and related acts were wholly consensual and that the rope was used because she wanted to have sex while tied up. A physician testified to having performed a sexual assault evaluation on the prosecutrix and to finding her upset and tearful, a red and irritated vaginal area, with the presence of sperm, and rope burns on her wrists. The neighbors, Mr. and Mrs. Robert Miller testified that when she knocked at their door she was hysterical, crying and shaking uncontrollably, with her hands tied behind her back.

It was for the jury to determine the credibility of the witness, *Urquhart* v. *State*, 273 Ark. 486, 621 S.W.2d 218 (1981). While there was corroboration in this case, the testimony of the prosecutrix alone was sufficient to support the verdict. *Curtis* v. *State*, 301 Ark. 208, 783 S.W.2d 47 (1990); *Lackey* v. *State*, 283 Ark. 150, 671 S.W.2d 757 (1984).

## II

Appellant's initial point is that the trial court erred in failing to set aside the verdict based on an allegation that a juror failed to heed an admonition not to discuss the case with third persons.

The jury concluded its deliberations and was dismissed on

September 23, 1992. On the following day it came to the attention of counsel for appellant that there had been a communication between a juror and a third party, Joe LaValle. A motion to vacate was filed accompanied by an affidavit signed by one Kathi Parker, asserting that her father, Joe LaValle, had communicated by CB radio during the trial with Janet Norris, a juror. The affidavit maintained that earlier that same day Parker had told her father that the testimony against appellant had been inconsistent, that LaValle told the juror his daughter thought appellant was innocent, that after talking to the juror, LaValle told his daughter "It doesn't look good for him."

There were counter affidavits from Janet Norris and LaValle stating that neither of them had discussed the merits of the case. LaValle's affidavit also stated:

> My daughter told me she is in love with Billy Dillard and I told her many times his case didn't look good. If I said that to her on the evening of September 22, 1992, I was expressing my opinion which was in no way based on anything said to me by Janet Norris, . . . or anyone else.

Appellant relies wholly on the affidavit of Kathi Parker, as no evidence other than the three affidavits was submitted to the trial court. The burden was on the appellant to prove that a reasonable possibility of prejudice resulted from juror misconduct and prejudice is not presumed in such situations. *Larrimore* v. *State*, 309 Ark. 414, 833 S.W.2d 358 (1992). Whether unfair prejudice occurred is a matter for the sound discretion of the trial court. *Butler* v. *State*, 303 Ark. 380, 797 S.W.2d 435 (1990). From those affidavits, the only proof before it, the trial court could readily have concluded that Ms. Parker's motives were not unbiased and that the communication between juror Norris and Joe LaValle did not relate to the trial. We find no abuse of discretion under these circumstances.

### III

On motion of the prosecution, and over the objection of the appellant, the jury was permitted to view the scene. Appellant maintains this was error since the alleged assaults occurred on May 30, 1992, whereas the jury viewed the scene on September 22 when weeds and grass were much higher. However, we find no

objection on this ground in the abstracted record. The objections to the trial court were the possibility of inclement weather, the logistics of transporting the jury, the adequacy of existing photographs of the scene, and the appellant's right to be present, with inevitable prejudice in that the jury would see him hand-cuffed. These points are abandoned on appeal and the point now argued was not preserved. Thus, we find nothing to address. *Walker v. State*, 301 Ark. 218, 783 S.W.2d 44 (1990).

## IV

Appellant's final point relates to the rape shield statute, Ark. Code Ann. § 16-42-101 (1987). Appellant relied on consent as his defense and prior to trial filed a motion for an in-camera hearing to determine the relevance of prior sexual conduct allegedly occurring between the prosecutrix and the appellant pursuant to the statute. However, at the hearing a discussion between counsel and the trial court reflects that counsel for the appellant effectively withdrew the motion and proffered no evidence of prior sexual conduct. It is clear that no ruling on the motion was given or sought:

THE COURT: All right, now, we've got what, Motion for In Camera hearing?

MS. HARRIS (Defendant's Attorney): Yes, sir. I filed that motion but since I filed that motion, I have reread the Rape Shield Statute and I found a case. I showed the case to Ms. Hearnsberger and what I understand from the *Kemp* case is that I am prohibited from questioning either Mr. Dillard or the victim about anything that may or may not have happened between the two of them prior to May 30th of 1992, let's say for example, May the 29th.

THE COURT: All right.

MS. HARRIS: I cannot do that. However, what the *Kemp* case stands for is that I can question Mr. Dillard, should he take the stand, about what happened between him and the victim on the day in question, on May 30th. However, I cannot cross examine her about it. He can only testify as to what happened between the two of them on that date.

THE COURT: Okay.

MS. HEARNSBERGER: In other words, during the res gestae of the crime is the way I understand it.

MS. HARRIS: That's correct.

MS. HEARNSBERGER: And we agree with that.

THE COURT: Apparently you're getting prepared then?

MS. HARRIS: Yes, sir.

MS. HEARNSBERGER: We would also make a Motion in Limine on our behalf though that they be admonished and their witnesses admonished from testifying to any kind of prior sexual activity, if any exists, pertaining to the victim. Just the Rape Shield Statute.

MS. HARRIS: That's absolutely correct.

Appellant now maintains that the statute mandates a hearing "no later than" three days before trial, whereas, the hearing in this instance was only one day prior to trial. However, we find no complaint on that score before the trial court, nor any request for additional time. Since the appellant plainly abandoned any intent to offer evidence under the rape shield statute the timing of the hearing is of no import.

Appellant now contends the colloquy between counsel for the state and the appellant was tantamount to a ruling by the trial court, since it allowed counsel for appellant to believe that she could not introduce evidence of prior sexual conduct. But we are not prepared to speculate from that brief exchange what was in the mind of the trial court. We can say that no ruling, tacit or otherwise, was requested. It was appellant's duty under § 16-42-101 to present such proof as he deemed pertinent to his defense and none was forthcoming.

For the reasons stated, the judgment is

AFFIRMED.