Douglas James CLAYTON *v.* STATE of Arkansas

CR 94-1446                                    906 S.W.2d 290

Supreme Court of Arkansas
Opinion delivered September 25, 1995

*Ralph M. Cloar, Jr.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Vada Berger*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Douglas James Clayton appeals from judgments of conviction for first-degree mur-

der, criminal attempt to commit first-degree murder, and aggravated assault.[1] He received concurrent sentences totalling 32 years. He now asserts that the trial court erred in denying his motions for a mistrial and for a new trial and that he was precluded from participation during substantial steps in his trial. We find no merit in the points argued, and we affirm.

The facts involve a drive-by shooting that occurred on Roosevelt Road in Little Rock on July 13, 1992. Kenneth Johnson was driving west on Roosevelt Road. The car belonged to his girlfriend, Sharonda Abdullah (also shown in the record as Shiranda Abdullah). Abdullah and the young son of Johnson and Abdullah were in the car. As Johnson approached the entrance to the Pulaski County Sheriff's Department on Roosevelt Road, a green Ford Mustang automobile which had been following Johnson's vehicle passed it left of center. As the Mustang passed, both the driver and passenger in the Mustang fired guns into Johnson's vehicle. Abdullah was killed by the gunfire. Clayton was charged with first degree murder, criminal attempt to commit first-degree murder, and aggravated assault in connection with the shooting.

At trial which commenced on May 18, 1994, Kenneth Johnson testified as one of the State's principal witnesses. He stated that he saw Clayton driving the green Mustang but that he could not identify the passenger who was shooting because he had a red rag covering his head and a red rag covering his mouth. After the State rested, Kenneth Johnson contacted Clayton's defense counsel and advised him that he wanted to recant his earlier testimony. He retook the stand as a defense witness and testified that he had made a mistake in identifying Clayton and that he could not say whether Clayton was in the car. This time he testified that both the driver and the passenger had red rags covering their faces.

After instructions and arguments of counsel, the jury began its deliberations on Clayton's guilt. After approximately an hour and a half of deliberations, a note from juror Kevin Russell was

---

[1]This is the second time this matter has been before us. In *Clayton* v. *State*, 321 Ark. 217, 900 S.W.2d 537 (1995), we dismissed the appeal on grounds that the notice of appeal was filed prematurely. We subsequently reversed our position due to an error in dismissing the matter and reinstated the appeal. *See Clayton* v. *State*, 321 Ark. 416, ___ S.W.2d ___ (July 17, 1995) (per curiam).

delivered from the jury room to the trial court asking whether he could tell the other jurors what he had seen during a trial recess. The trial court and counsel for the State and Clayton discussed the matter, and counsel for Clayton recommended that the trial court question the juror outside the presence of counsel or Clayton. He added that counsel's being present might intimidate the juror. A conference between the trial court and the juror commenced. Juror Russell advised the trial court that he saw Clayton's attorney give money to a "tall, grey haired man with a beeper" who had brought Kenneth Johnson back to the courtroom immediately prior to the time that he recanted his testimony. The juror added that he had not apprised the other jurors of what he observed.

Following the interview with Russell, the trial court related the circumstances to counsel. Defense counsel moved for a mistrial on the basis that the jury was tainted. After more discussion about the problem and how to salvage the trial, a second mistrial motion was made by the defense for the same reason. More discussion was had among the trial court and counsel, following which the trial court stated:

> What I'm willing to do is this. Call him (juror Russell) in here in the presence of the attornies (sic) and ask him, and I will tell him this, I have looked into your observation and I have satisfied by my investigation that what you felt you saw did not occur. Based upon that can you set that aside and render a verdict based solely upon the evidence and the law. And the only thing that I will accept is that he says that he can. If he says anything less like I will try or whathave (sic) you I will declare a mistrial. But if he assures me tha[t] he can we'll go forward.

Defense counsel opposed this procedure and again moved for a mistrial. The trial court then called juror Russell to the stand and told him that the court was satisfied that the exchange did not take place as Russell thought it had. The court inquired whether Russell could set his observation aside and decide the case based on the evidence and the law as instructed. Russell answered "yes." The trial court requested the bailiff to escort the juror back to the jury room to continue deliberations.

During this entire proceeding in the courtroom with coun-

sel and then with juror Russell, Clayton was not present. At one point, he sought to enter the courtroom, and the trial court stated that he thought Clayton did not need to be present. Clayton's counsel concurred and said to his client: "Jamie we need you to stay out, okay?"

The jury subsequently returned guilty verdicts. After the sentencing phase, Clayton received sentences of 20 years for criminal attempt to commit murder and 6 years for aggravated assault to run consecutively, but the 26-year sentences would run concurrently with a 32-year sentence assessed for first-degree murder.

On June 1, 1994, Clayton filed a motion for a new trial, alleging that several jurors had observed defense counsel pay money for Kenneth Johnson to alter his testimony and that this "bribe" tainted their verdict. Also on this date, a deputy prosecuting attorney advised the trial court that another juror, Katherine Hatcher, had told him when the trial was over that several jurors conversed about the payment of money by one of Clayton's attorneys to Kenneth Johnson before he changed his testimony. This conversation took place after the jury's decision. The trial court stated that it appeared that some jurors, apart from juror Russell, had seen something that aroused suspicion. Defense counsel, Ralph Cloar, informed the court that the only money paid by him during trial was to a bail bondsman on behalf of one of his other clients.

On June 15, 1994, a hearing was held by the trial court on its own motion in which all of the jurors except one were examined by the court. Juror Russell testified that he had not discussed his concerns with any other juror until after the jury had agreed on Clayton's punishment. Other jurors confirmed that nothing was said about the exchange of money until after the jury had voted on the sentence, though several jurors related to the court that they believed more than one juror had seen the incident. One juror was absent from the hearing. Another juror did testify that the matter may have been brought up after the guilt phase and before sentencing but that he could not be certain. At the conclusion of the hearing, the trial court found that the jurors testified that nothing happened outside the courtroom which influenced their decisions. The court further found that Clayton had not met his burden of proof for a mistrial or for a new trial, and denied both motions.

■ Clayton first contends in his appeal that the trial court erred in denying his motion for a mistrial as well as his motion for a new trial because the jury verdicts were tainted. On this point, we initially address the State's contention that no ruling was obtained on any of counsel's motions for a mistrial. We disagree with the State. The trial court clearly advised counsel of what it was willing to do after much discussion surrounding counsel's mistrial motions. The court stated that it would tell juror Russell there was nothing to what he thought he saw. Then the court would inquire whether Russell could set aside the incident and decide the case based on the evidence and law. The court told the prosecutor and defense counsel that it would grant the motion for a mistrial, if Russell responded that he could not put the matter out of his mind. In the ensuing colloquy with the court, juror Russell responded that he could maintain his objectivity, and the court permitted the jury deliberations to proceed. We have no doubt that the mistrial motion was denied. We note, in addition, that at a post-trial hearing on Clayton's motion for a new trial, the deputy prosecuting attorney referred to the fact that the trial court had *ruled* on the mistrial motion.

■■ Turning to the merits, we observe as we often have that a mistrial is an extreme remedy that should only be granted when justice cannot be served by continuing the trial. *Bullock* v. *State*, 317 Ark. 204, 205, 876 S.W.2d 579, 580 (1994); *Cook* v. *State*, 316 Ark. 384, 872 S.W.2d 72 (1994). A trial court has broad discretion in deciding whether to grant or deny a mistrial, and we will not reverse the trial court's decision in this regard absent an abuse of that discretion or manifest prejudice to the complaining party. *Bullock* v. *State, supra.* Here, the trial court questioned juror Russell regarding what he saw, and he responded clearly and unmistakably that he could set aside his observation and decide the case objectively. He further testified that he had not and would not discuss his observations with the rest of the jury panel during deliberations. The subsequent hearing on June 15, 1994, bears out that he did not do so until after the jury had decided the appropriate sentences. In sum, the trial court's ruling rests on solid footing. We find no basis for a holding that the trial court abused its discretion in deciding that the mistrial motion should not be granted.

■ Clayton next urges that the trial court erred in deny-

ing his motion for a mistrial because the court violated Ark. Code Ann. § 16-89-125(e) (1987), when it examined juror Russell *in camera* and outside the presence of counsel, Clayton, or the other jurors. This precise objection was never made to the trial court, and this court has been steadfast in holding that an argument cannot be raised for the first time on appeal. *See, e.g., Fuller* v. *State*, 316 Ark. 341, 872 S.W.2d 54 (1994).

Clayton urges, however, that we should presume prejudice for a violation of § 16-89-125(e), even when no objection has been made. We disagree. This is not a case where the judge entered the jury room, with consent of counsel and with both counsel present, to answer questions about concurrent sentences and parole. *See Tarry* v. *State*, 289 Ark. 193, 710 S.W.2d 202 (1986). In *Tarry*, we alluded to caselaw where we held that noncompliance with this statute gives rise to a presumption of prejudice. We held in *Tarry* that the State had not met its burden and that the trial court's violation of the statute by answering questions of law in the jury room must be deemed to be prejudicial. But in the case before us there was no disagreement among the jurors as to any part of the evidence and no request to be informed as to a point of law, which are the twin circumstances that trigger the applicability of § 16-89-125(e). Rather, juror Russell wanted to know whether he could impart what he had seen to the other jurors. The inapplicability of § 16-89-125(e) is further illustrated by the fact that had the trial court brought in the entire jury to hear Russell's inquiry, every juror would have known what Russell saw. This might well have led to a mistrial. We hold that § 16-89-125(e) was not apposite to the facts of this case.

We further observe that defense counsel did not raise an objection to the *in camera* interview on any other ground such as a deprivation of Clayton's participation in a substantial step in the trial proceedings. *See* Ark. Code Ann. § 16-89-103(a)(1); *Latham* v. *State*, 318 Ark. 19, 883 S.W.2d 461 (1994); *Davlin* v. *State*, 313 Ark. 218, 853 S.W.2d 882 (1993); *Bell* v. *State*, 296 Ark. 458, 757 S.W.2d 937 (1988). In fact, he urged that a one-on-one interview take place and added that he did not want to be in chambers with the trial court and Russell. As he failed to object, this court will not address the argument. *Rucker* v. *State*, 320 Ark. 643, 899 S.W.2d 447 (1995); *Trimble* v. *State*, 316 Ark. 161, 871 S.W.2d 562 (1994). In addition, defense counsel can-

not be heard to complain of an event for which he was partially responsible. *Morgan* v. *State*, 308 Ark. 627, 826 S.W.2d 271 (1992); *Berry* v. *State*, 278 Ark. 578, 647 S.W.2d 453 (1983); *Kaestel* v. *State*, 274 Ark. 550, 626 S.W.2d 940 (1982).

In an analogous point, Clayton asserts that the trial court erred in excluding him from the courtroom when the court and trial counsel discussed Russell's observations and the motions for mistrial and when the trial court questioned juror Russell. Clayton claims that these were also substantial steps in his trial and that he was entitled to be present. Clayton's counsel, however, instructed Clayton to remain outside the courtroom during the discussion of the jury problem and never objected to his absence. Again, counsel cannot raise an issue in this court when he did not object at the trial court level and, indeed, helped to precipitate the absence of his client from the proceedings.

■ Clayton finally argues that the trial court erred in denying his motion for a new trial. A decision on whether to grant or deny a motion for a new trial lies within the sound discretion of the trial court, and this court will not reverse that decision absent an abuse of that discretion. *Chism* v. *State*, 312 Ark. 559, 853 S.W.2d 255 (1993). As with other factual findings, a trial court's factual determinations on a motion for a new trial will not be reversed unless clearly erroneous. *See Porter* v. *State*, 308 Ark. 137, 823 S.W.2d 846 (1992).

■ Here, the trial court personally interviewed each juror save one under oath and found that each juror testified that nothing occurred outside of the courtroom that influenced his or her decision. One juror was not present at the hearing but that absence was waived by Clayton. Clayton bore the burden of proving that the extraneous information of a bribe had filtered into the jury room and resulted in prejudice. *See Dillard* v. *State*, 313 Ark. 439, 855 S.W.2d 909 (1993). He failed to do this, and we will not presume prejudice in this context. The trial court's findings were not clearly erroneous, and the court did not err in denying the motion for a new trial.

Affirmed.