STATE of Arkansas *v.* Raphel Jerome CHERRY

CR 99-1382                                             20 S.W.3d 354

Supreme Court of Arkansas
Opinion delivered July 7, 2000
[Petition for rehearing denied September 7, 2000.* ]

---

\* GLAZE and IMBER, JJ., would grant.

*Marion Humphrey*, Judge;

*Mark Pryor*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., for appellant.

*Montgomery, Adams & Wyatt, PLLC*, by: *Dale E. Adams*, for appellee.

DONALD L. CORBIN, Justice. The State appeals from the Pulaski County Circuit Court's order denying the State's motion for reconsideration and granting Appellee Raphel Jerome Cherry a new trial. For reversal, the State argues that the trial court abused its discretion in granting Cherry a new trial. This court has jurisdiction of the present matter pursuant to Ark. Sup. Ct. R. 1-2(a)(2) and (8), as well as Ark. R. App. P.—Crim. 3. We find no merit in the State's argument, and thus, affirm the decision of the trial court.

The record reflects that Cherry was convicted of first-degree murder following a two-day jury trial and was sentenced to life in prison. Following his conviction and sentencing, Cherry filed a

motion for a new trial, pursuant to Ark. Code Ann. § 16-89-130 (Repl. 1987), alleging juror misconduct. The allegations involving jury misconduct were brought to the trial court's attention by Patrick Hart, an alternate juror. Hart told the court bailiff that he did not believe that Cherry had received a fair trial. Mr. Hart reported to the bailiff that the jurors had been discussing the case during various breaks in the trial even though the trial court had admonished them not to discuss the case. Mr. Hart also reported that some of the jurors had made up their minds with regard to Cherry's guilt before the case was submitted to them. The bailiff reported this information to the trial court, who in turn notified counsel.

The State resisted Cherry's motion for a new trial on the ground that he made no assertion of prejudice. Moreover, the State argued that there was no precedent for granting a new trial resulting from juror misconduct where such conduct was not the result of extraneous prejudicial materials or improper outside influence. The trial court conducted a hearing on September 23, 1999, and each of the twelve jurors, plus Mr. Hart and the bailiff were called to testify. The trial court properly limited the scope of the examination to matters that took place prior to formal deliberations, and did not allow either party to examine the jurors with regard to matters involving the jury's actual deliberations.

Mr. Hart testified under oath that jurors had repeatedly discussed the case during breaks in the trial. According to Mr. Hart, the first time jurors discussed the case was before the State had rested its case. Mr. Hart also testified that prior to the time that the defense presented its case, jurors discussed the fact that Cherry was probably guilty because of the simple fact that his brother testified against him, even though the judge instructed them that such testimony could not be considered because it was improperly admitted. Seven out of the twelve jurors admitted to either hearing or participating in conversations about the trial prior to the time formal deliberations began. While most of these jurors could not recall specifics about these conversations, they admitted to discussing the facts of the case, as well as the evidence. Some of the jurors also admitted that they overheard discussions regarding Cherry's guilt or innocence. Each juror denied, however, that any of these conversations had affected their ultimate decision to convict Cherry.

After hearing the testimony and weighing the credibility of the witnesses, the trial court found that Cherry was entitled to a new trial. The trial court found credible Mr. Hart's testimony that some jurors had made up their minds before formal deliberations had begun. The trial court also noted that it had repeatedly instructed the jury not to discuss the case, but that they did so in contravention of his instructions. The State then filed a motion asking the trial court to reconsider its decision, arguing that Cherry failed to demonstrate that he was prejudiced by the jurors' misconduct. The State also attempted to attack Mr. Hart's veracity by submitting affidavits from some of the jurors. These affidavits stated that after Hart testified at the new-trial hearing, he returned to the waiting room and told some of the jurors that he did not tell on anyone and that the judge and bailiff had approached him and started asking questions about the case. The State argued that this inconsistent recitation of the sequence of events proved that Mr. Hart's testimony was not credible. The trial court denied the motion and this appeal followed.

■ This court has said that a decision on whether to grant or deny a motion for new trial lies within the sound discretion of the trial court. *Miller v. State*, 328 Ark. 121, 942 S.W.2d 825 (1997). We will reverse a trial court's order granting a motion for a new trial only if there is a manifest abuse of discretion. *Id.* A trial court's factual determination on a motion for a new trial will not be reversed unless clearly erroneous. *Clayton v. State*, 321 Ark. 602, 906 S.W.2d 290 (1995). The State argues as its only point on appeal that the trial court abused its discretion by granting Cherry a new trial. In urging this court to reverse the trial court's grant of a new trial, the State submits three reasons as to why the trial court's decision was an abuse of discretion: (1) the grant of new trial was erroneous absent a finding of prejudice; (2) any finding of prejudice based on Mr. Hart's testimony was erroneous; and (3) a new trial was not warranted. We disagree.

We recognize at the outset that the present appeal is somewhat extraordinary. First of all, this situation is not governed by Ark. R. Evid. 606(b), because the jurors were not questioned about matters involving their formal deliberations. Rather, the hearing focused on discussions that occurred prior to formal deliberations. Thus, the United States Supreme Court's holding in *Tanner v. United States*, 483 U.S. 107 (1987), is not controlling. In *Tanner*, the United States Supreme Court held that it was not error for the

district court to refuse to conduct an evidentiary hearing at which jurors would testify about drug and alcohol use during the trial. In so holding, the Court stated that under the federal rules of evidence a verdict may not be impeached by jury testimony on matters involving jury deliberations. Second, the jury misconduct that occurred here did not involve the consideration of extraneous prejudicial information, nor were there any allegations that an improper outside influence affected the jury deliberations. While those are certainly the most common types of jury misconduct, they are not exclusive types of misconduct that warrant relief.

■ In the present appeal, we are faced with intrajury misconduct that occurred prior to the jury beginning formal deliberations. Seven of the twelve jurors admitted that they either participated in or overheard conversations about the case prior to formal deliberations. Some of those jurors believed that those conversations took place after the defense rested, but others were unable to recall exactly when the conversations occurred. Mr. Hart testified, however, that the discussions took place every time the jurors were left alone together. While most jurors could not recall the specific context of these discussions, a review of the jurors' testimony reveals the following:

Q    Okay. Do you recall what was said?

A    Not specific details. I seem to recall that some of the evidence was talked about like the keys, presence of the keys, the glass at the rear door.

....

Q    I want to ask you. Do you think it affected other persons in the jury room as what they talked about?

A    Not being the other people, I really don't know. The only facts that — they just discussed the evidence that was presented and tried to clear up some points about some of that evidence....

....

Q    Okay. So, they expressed their point of view about the case and the facts presented prior to this case being decided?

A    Yes, sir.

Q    Okay. And you don't know how that impacted on their decision?

A    No, sir, I don't.

....

Q    And this discussion was about the facts of the case?

A    Yes.

Q    Okay. And discussion by more than one juror?

A    Yes.

Q    Several jurors, in fact?

A    Yes.

Q    Probably what? Eight or ten or so?

A    No. I'd say maybe three to five.

....

Q    ... These three to five jurors might have formed an opinion about guilt or innocence, is what you're saying?

A    Yes.

These comments, considered in light of Mr. Hart's testimony that some jurors had already decided the case, clearly support a finding that there was a reasonable possibility of prejudice that resulted from the premature discussions about the facts, issues, and evidence in the case.

■ Following allegations of juror misconduct, the moving party bears the burden of proving that a reasonable possibility of prejudice resulted from any such juror misconduct. *Dillard v. State,* 313 Ark. 439, 855 S.W.2d 909 (1993); *Larimore v. State,* 309 Ark. 414, 833 S.W.2d 358 (1992). We will not presume prejudice in such situations. *Id.* The moving party must show that the alleged misconduct prejudiced his chances for a fair trial and that he was unaware of the bias until after the trial. *Trimble v. State,* 316 Ark. 161, 871 S.W.2d 562 (1994). Whether unfair prejudice occurred is a matter for the sound discretion of the trial court. *Butler v. State,* 303 Ark. 380, 797 S.W.2d 435 (1990).

■ ■ Here, the trial court found Mr. Hart's testimony that some jurors had prematurely decided the issue of Cherry's guilt to be credible, and we cannot say this was error, let alone manifest error. This issue turned on the credibility of witnesses, and this

court has repeatedly held that the issue of witness credibility is for the trial judge to weigh and assess. *Green v. State*, 334 Ark. 484, 978 S.W.2d 300 (1998); *Myers v. State*, 333 Ark. 706, 972 S.W.2d 227 (1998). Accordingly, this court will defer to the superior position of the trial court to evaluate the credibility of witnesses. *Humphrey v. State*, 327 Ark. 753, 940 S.W.2d 860 (1997).

■ We agree with the State that a defendant is entitled to a fair trial, not a perfect trial. *See Clayton*, 321 Ark. 602, 906 S.W.2d 290. Cherry, though, was deprived of even a fair trial. In arguing that Cherry failed to demonstrate that he was prejudiced by the jury misconduct, the State fails to recognize that the prejudice in the case at bar stems from the fact that some jurors may have made up their minds about Appellee's guilt or innocence before the case was submitted to them. According to Hart's testimony, this may have occurred prior to the time the State had rested its case, and thus, before Cherry had a chance to present his defense. For even one juror to prematurely decide a defendant's guilt before hearing all the evidence and being instructed on the law, deprives that criminal defendant of his right to a fair and impartial jury. Moreover, by discussing the case prematurely, those jurors who had already made up their minds could have possibly influenced others who were undecided about Cherry's guilt.

■ In order to receive a new trial, Cherry was not required to demonstrate exactly how he was prejudiced; rather, he only needed to prove that there was a reasonable possibility of prejudice. *See Larimore*, 309 Ark. 414, 833 S.W.2d 358. Once Cherry demonstrated this possibility of prejudice, the trial court could not sit idly by and do nothing. The fact that this problem arose in a posttrial situation left the trial court with only one option, to grant Cherry a new trial. Section 16-89-130(c)(7) (Repl. 1987) provides in part:

> (c) The court in which a trial is had upon an issue of fact may grant a new trial when a verdict is rendered against the defendant *by which his substantial rights have been prejudiced*, upon his motion, in the following cases:
>
> ....
>
> (7) Where, from the misconduct of the jury, or from any other cause, the court is of [the] opinion that the defendant has not received a fair and impartial trial. [Emphasis added.]

Thus, it was clearly within the trial court's discretion to grant Cherry a new trial.

We reject the State's argument that the trial court erred in finding prejudice. The federal courts of appeals' treatment of intrajury misconduct is enlightening to the situation at hand. The courts of appeals have previously held that jury misconduct involving premature discussions may prejudice a defendant. *See United States v. McVeigh*, 153 F.3d 1166 (10th Cir. 1998), *cert denied*, 526 U.S. 1007 (1999); *United States v. Resko*, 3 F.3d 684 (3rd Cir. 1993). In *Resko*, during the course of the trial, a juror approached the court's bailiff and reported that members of the jury had engaged in premature discussions. The bailiff reported this to the trial court, who in turn informed counsel. After rejecting counsel's motion for individualized *voir dire* of the jury panel, as well as a motion for a mistrial, the trial court called the jurors en masse, told them of the problem, and requested each juror to fill out a questionnaire. The questionnaire consisted of the following two questions:

> 1. Have you participated in discussing the facts of this case with one or more other jurors during the trial? Yes____  No____
>
> 2. If your answer to Question No. 1 is "Yes," have you formed an opinion about the guilt or non-guilt of either defendant as a result of your discussions with other jurors? Yes____  No____

All twelve jurors answered "yes" to the first question and "no" to the second question. The trial court did not inquire further, and the trial resumed with the defendants ultimately being convicted.

On appeal, the Third Circuit concluded that the trial court erred by declining Resko's motion to engage in further inquiry to determine whether the jurors had maintained open minds. The court pointed out that the prohibition against jurors discussing the case before they have heard both the evidence and the court's legal instructions is a generally accepted principle of trial administration. The court then set forth several reasons for the prohibition on premature deliberations. For example, the court pointed out that the jury system is meant to involve decision making as a collective, deliberative process, and premature discussions among individual jurors may thwart that goal. Also, requiring the jury to refrain from prematurely deliberating the case in a criminal matter helps protect a defendant's right to a fair trial under the Sixth Amendment, as well as his or her due-process right to place the

burden on the government to prove its case beyond a reasonable doubt. We are persuaded by this reasoning.

Another federal case discussing the issue of intrajury misconduct is *United States v. Nance*, 502 F.2d 615 (8th Cir. 1974). In *Nance*, the court of appeals held that it was not an abuse of discretion for the trial court to deny a motion for a new trial. In so holding, however, the court pointed out that the only testimony regarding juror misconduct came from the defendant's counsel, and was thus hearsay. None of the jurors were questioned about their participation in discussions during the course of the trial. In addition, although an alternate juror reported the premature discussions to defense counsel after the case had been submitted to the jury, defense counsel did not report this to the court until after an unfavorable verdict had been rendered. Unlike the present situation, the court in *Nance* pointed out that the alternate juror stated that despite the alleged discussions, no juror had firmly made up his mind. Again, the prejudice in this case stems from the fact that some jurors not only made up their minds about whether Cherry was guilty, but also discussed those opinions with other jurors, in essence thwarting the collective, deliberative decision-making process of the jury.

In sum, the trial court was faced with evidence that jurors had discussed the facts in the case, as well as the evidence. As egregious as such conduct may have been, we cannot say that standing alone, it would have been enough to support a finding of prejudice. However, when this conduct is considered in light of the testimony that some jurors prematurely formed a conclusion about defendant's guilt and then discussed those conclusions with other jurors, it does support a finding of prejudice. In light of the foregoing, we cannot say the trial court manifestly abused its discretion in granting Cherry a new trial.

Affirmed.

GLAZE, IMBER, and SMITH, JJ., dissent.

ANNABELLE CLINTON IMBER, Justice, dissenting. I dissent on the basis of Rule 606(b) of the Arkansas Rules of Evidence, which states:

> (b) *Inquiry into Validity of Verdict or Indictment.* Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the

jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received, but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

Ark. R. Evid. 606(b). The majority states that "this situation is not governed by Ark. R. Evid. 606(b) because the jurors were not questioned about matters involving their formal deliberations. Rather, the hearing focused on discussions that occurred prior to formal deliberations." I disagree wholeheartedly with the majority's reasoning.

Rule 606(b)'s limitations on postverdict juror testimony is not limited to matters that occur during "formal deliberations." The rule simply states that "a juror may not testify as to any matter or statement occurring during the course of *the jury's deliberations.*" Ark. R. Evid. 606(b) (emphasis added). The United States Supreme Court has clearly indicated that the matter inquired into need not occur during formal deliberations in order for Rule 606(b) to apply. *Tanner v. United States*, 483 U.S. 107 (1987) (interpreting Fed. R. Evid. 606(b), which is virtually identical to the Arkansas rule). In *Tanner,* as the majority of this court states, "[t]he United States Supreme Court held that it was not error for the district court to refuse to conduct an evidentiary hearing at which jurors would testify about drug and alcohol use *during the trial.*" (Emphasis added). Therefore, Rule 606(b) prohibits juror testimony regarding internal jury matters that occurred *during the trial.* The implicit holding of *Tanner* is that Rule 606(b) reaches misconduct by the jury after impanelment but before it begins formally to deliberate. Christopher B. Mueller, 3 Federal Evidence §§ 248, 252 (2d. Ed. 1994). Specifically, Rule 606(b)'s limitations on juror testimony extend "to proof that jurors discussed the case among themselves before getting final instruction and being dismissed to deliberate." Christopher B. Mueller, 3 Federal Evidence § 252 (2d. Ed. 1994). At least one federal court has so held. *United States v. Cuthel,* 903 F.2d 1381 (11th Cir. 1990). There, the Eleventh Circuit held that under *Tanner,* inquiry into jury "misconduct prior to the deliberations" is barred, and the trial court properly refused to investigate allegations that jurors "considered the merits of the case

before they were instructed to begin deliberations." *Id.* at 1382, 1383. Thus, the majority erroneously concludes that Rule 606(b) is inapplicable to the present case because the jurors were questioned only about discussions that occurred prior to formal deliberations.

Additionally, Rule 606(b) states that a juror may not testify *"to the effect of anything upon his or any other juror's mind or emotions* as influencing him to asset [assent] to or dissent from the verdict or indictment or concerning his mental processes in connection therewith." Ark. R. Evid. 606(b) (emphasis added). The trial court in this case allowed defense counsel to question the jurors about whether the premature jury deliberations had any affect on their decision as to Mr. Cherry's guilt or innocence or had any impact on their decision as to sentencing. This is exactly the sort of testimony that Rule 606(b) expressly prohibits. *Tosh v. State*, 278 Ark. 377, 646 S.W.2d 6 (1983); *Lewis v. Pearson*, 262 Ark. 350, 556 S.W.2d 661 (1977).

We have interpreted Rule 606(b) to allow testimony by jurors in only two instances; that is, when the inquiry involves (1) whether any improper outside influence has been brought to bear upon the jurors or (2) whether any extraneous prejudicial information has been improperly brought to the jury's attention. *Davis v. State*, 330 Ark. 501, 956 S.W.2d 163(1997) ("A.R.E. 606(b) only permits inquiry into whether any external influence or information could have played a part in the jury's verdict."); *Watkins v. Taylor Seed Farms, Inc.*, 295 Ark. 291, 748 S.W.2d 143 (1988) ("Rule 606(b) ensures that jury deliberations should remain secret, unless it becomes clear that they jury's verdict was tainted by a showing of extraneous prejudicial information or some improper outside influence."). Jurors may not testify to matters internal to the jury room. *Witherspoon v. State*, 322 Ark. 376, 909 S.W.2d 314 (1995) ("We have recognized that the sanctity of jury deliberations is a fundamental precept of our adversary system."); *Watkins v. Taylor Seed Farms, Inc.*, *supra* ("this court has shown a reluctance to invade the sanctity of the jury room in order to impeach a jury's verdict"); *Borden v. St. Louis Southwestern Ry. Co.*, 287 Ark. 316, 698 S.W.2d 795 (1985) ("[Rule 606(b)] provides that an irregularity in the jury room which is an internal occurrence may not be investigated, but that an irregularity due to some external event may be investigated."). Consequently, it is well recognized by this court that inquiry into matters internal to the jury are prohibited by Rule

606(b), and the rule *only* allows evidence of external influence or information.

It follows, then, that prejudice can only be found when extraneous prejudicial information has been brought to the jury's attention or when improper outside influence has been brought to bear on the jury. This court has never found prejudice resulting from a matter internal to the jury. The majority is incorrect when it states that extraneous prejudicial information and improper outside influence "are not exclusive types of misconduct that warrant relief." Indeed, they are the only exceptions provided in Rule 606(b) that warrant postverdict relief. In the present case, none of the jurors' testimony related to extraneous prejudicial information or improper outside influence. The trial court therefore erred when it found prejudice based upon such testimony.

The majority cites two federal cases in support of its conclusion that the premature jury discussions prejudiced Mr. Cherry: *United States v. McVeigh*, 153 F.3d 1166 (10th Cir. 1998) and *United States v. Resko*, 3 F.3d 684 (3rd Cir. 1993). While those cases seem to allow juror testimony regarding intrajury misconduct and premature jury discussions despite Rule 606(b), they are clearly inapposite. Rule 606(b) applies only to postverdict testimony by jurors. *United States v. McVeigh, supra; United States v. Resko, supra.* After all, the reason for the rule is to protect jury verdicts from impeachment. *Tanner v. United States, supra; State v. Osborne*, 337 Ark. 172 , 988 S.W.2d 485 (1999); *Watkins v. Taylor Seed Farms, Inc., supra*; Christopher B. Mueller, 3 Federal Evidence § 247 (2d. Ed. 1994). The Supreme Court in *Tanner* reiterated the substantial policy considerations that support the common-law rule against the admission of jury testimony to impeach a verdict, which is now embodied in Rule 606(b):

> As early as 1915, this Court explained the necessity of shielding jury deliberations from public scrutiny:
>
> "[L]et it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who  took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what

was intended to be a private deliberation, the constant subject of public investigation — to the destruction of all frankness and freedom of discussion and conference." McDonald v. Pless, 238 U.S., at 267-268, 35 S.Ct., at 784.

See also *Mattox v. United States*, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892).

The Court's holdings requiring an evidentiary hearing where extrinsic influence or relationships have tainted the deliberations do not detract from, but rather harmonize with, the weighty government interest in insulating the jury's deliberative process.

\*\*\*

There is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it. Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process. *See, e.g., Government of Virgin Islands v. Nicholas, supra*, at 1081 (one year and eight months after verdict rendered, juror alleged that hearing difficulties affected his understanding of the evidence). Moreover, full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of postverdict scrutiny of juror conduct. See Note, Public Disclosures of Jury Deliberations, 96 Harv. L. Rev. 886, 888-892 (1983).

*Tanner v. United States*, 483 U.S. at 119-21.

In *United States v. Resko*, the jury misconduct was discovered mid-trial, on the seventh day of a nine-day trial, before the jury had reached a verdict, and the jurors were questioned upon a motion for mistrial prior to a verdict being reached. Thus, Rule 606(b) was inapplicable. *United States v. Resko, supra*. Likewise, in *United States v. McVeigh*, the intrajury misconduct was brought to the court's attention weeks before the jury reached a verdict, and Rule 606(b) was inapplicable. In the instant case, however, the jurors were called to testify at a hearing on a motion for a new trial made several days after the jury had reached a verdict. Unlike *Resko* and

*McVeigh,* this case involved the impeachment of a jury verdict, and, therefore, Rule 606(b) was applicable.

Finally, the majority makes the broad assertion that a criminal defendant will be deprived of his right to a fair and impartial jury if "even one juror" prematurely decides the defendant's guilt before hearing all the evidence and being instructed on the law. The Supreme Court rejected this assertion in *Tanner,* when it held that an evidentiary hearing in which jurors would testify about juror alcohol and drug use during trial was not required to protect the defendant's right to an impartial and competent jury under the Sixth Amendment. *Tanner v. United States, supra.*

In conclusion, the postverdict testimony by the jurors in the present case related entirely to intrajury matters and was inadmissible under Rule 606(b). There was no evidence of extraneous prejudicial information or improper outside influence. Accordingly, there was no prejudice shown. For these reasons, I respectfully dissent.

GLAZE and SMITH, JJ., join in this dissent.