Cite as 2022 Ark. App. 236

# ARKANSAS COURT OF APPEALS
## DIVISION I
#### No. CR-21-462

| | | |
|---|---|---|
| RYAN WARREN | | Opinion Delivered May 18, 2022 |
| | APPELLANT | |
| | | APPEAL FROM THE BOONE COUNTY CIRCUIT COURT [NO. 05CR-20-98] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE JOHN R. PUTMAN, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

### STEPHANIE POTTER BARRETT, Judge

Ryan Warren was convicted by a Boone County jury of one count of rape; three counts of computer exploitation of a child; two counts of sexual assault in the second degree; and twenty-seven counts of distributing, possessing, or viewing matters depicting child sex. He was sentenced to a total of 405 years' imprisonment. On appeal, Warren argues that the circuit court erred in refusing to grant his request for mistrial after he claims an alternate juror engaged in juror misconduct. We affirm.

Warren does not contest the sufficiency of the evidence to support his convictions. After receiving cyber tips from the National Center for Missing and Exploited Children, law enforcement officers began investigating Warren for possession of child pornography tracked back to a Gmail address belonging to him. During the course of the investigation, law enforcement officers also found a "substantial amount" of child pornography in one of his

internet accounts. At trial, Warren's stepdaughter testified he began sexually assaulting her in the fifth grade, and it continued until she was in the seventh grade.

At a bench conference on the first day of testimony at trial, during direct examination of the State's first witness, the prosecutor advised the circuit court that the Boone County Sheriff had forwarded him a text the sheriff had received from an alternate juror's father. The text stated:

> I've got a question for y'all. My oldest daughter was selected as alternate for jury duty. It's on a child pornography case. She told them she could be impartial, but after one day, she's told me she can't do it. They just adopted two kids a couple of years ago. She's physically sick after one day. Is there any way she can get out at this point?

Both the State and defense counsel agreed that the alternate juror should be dismissed. Defense counsel moved for a mistrial on the basis of juror misconduct; the State objected on the basis that there was not a sufficient foundation to establish any wrongdoing or "poisoning" of the jury. Defense counsel requested that the circuit court inquire if any of the jurors had communicated with the alternate juror that morning. The circuit court explained that it intended to remind the jurors they had been instructed not to discuss the case among themselves or with anyone else and would ask if any juror had in any way discussed the case or the issues surrounding it with anyone else. The court asked defense counsel if that was what he wanted to know; defense counsel apprised the court that if he thought he needed more, he would request that the court ask further questions.

The alternate juror was brought into the courtroom, and the circuit court excused her without inquiring whether she could remain impartial or whether she had discussed the

case with anyone. When she asked if she had done something wrong, the circuit court told her no, that she was an honest person. When the jurors returned to the courtroom, the court reminded them of the instruction it gave each day to not talk either among themselves about the case until the end of the case when they returned to the jury room to deliberate or to anyone involved in the case until the trial had ended and they had been discharged as jurors. The circuit court then asked the jurors if anyone had approached them to talk about the case or if they had talked about the case to anyone; the jurors all shook their heads no. The circuit court then denied Warren's motion for mistrial. Defense counsel thanked the judge and made no request for further inquiry. The trial continued, and the jurors ultimately found Warren guilty of thirty-three offenses.

Warren's sole point on appeal is that the circuit court erred in denying his motion for mistrial, alleging that the alternate juror engaged in juror misconduct. A mistrial is an extreme and drastic remedy that will be resorted to only when there has been an error so prejudicial that justice cannot be served by continuing with the trial or when the fundamental fairness of the trial has been manifestly affected. *Sampson v. State*, 2018 Ark. App. 160, 544 S.W.3d 580. The decision to grant a mistrial is within the sound discretion of the circuit court and will not be reversed absent a showing of abuse or manifest prejudice to the appellant. *Id*. Because the presiding circuit court judge is in the best position to evaluate the impact of any alleged errors, such discretion will not be disturbed except where there is an abuse of discretion or manifest prejudice to the movant. *Gould v. State*, 2016 Ark. App. 124, 484 S.W.3d 678.

Following allegations of juror misconduct, the moving party has the burden of proving both juror misconduct and a reasonable probability of resulting prejudice. *Id.* This court will not presume prejudice in such situations. *Id.* Jurors are presumed unbiased and qualified to serve, and it is the appellant's burden to show otherwise. *Id.* Whether prejudice occurred is also within the sound discretion of the circuit court. *Id.*

In support of his contention, Warren cites *U.S. v Resko*, 3 F.3d 684 (3d Cir. 2000), and *State v. Cherry*, 341 Ark. 924, 20 S.W.3d 354 (2000). Both cases are distinguishable from the present case.

In *Resko*, on the seventh day of a nine-day trial, it came to the attention of the federal district court that jurors had been discussing the case amongst themselves. The court distributed a two-part yes/no questionnaire asking jurors whether they had discussed the case with other jurors, and if so, had they formed an opinion as to guilt or innocence. All of the jurors admitted engaging in premature discussion of the case, although they all denied that they had arrived at a decision as to guilt or innocence. The district court denied requests by the defendants to voir dire each member of the jury to further ascertain the extent of the premature deliberations and the extent of any prejudice suffered by the defendants as a result of such conversations. After receiving the jurors' questionnaire answers, the district court, concluding the defendants had suffered no prejudice as a result of the jury's misconduct, denied the defendants' motion for mistrial. The Third Circuit vacated this decision and remanded for a new trial, holding that the district court erred in not conducting a more "searching inquiry" into any potential prejudice because the questionnaire did not provide

4

any significant information about the nature or the extent of the discussions undertaken by the jurors, and because there was no indication as to what was discussed by the jurors, it could not be reasonably determined that the defendants would suffer no prejudice from the premature discussions.

In *Cherry*, after the defendant was convicted of first-degree murder and sentenced to life in prison, an alternate juror reported to the court bailiff that he did not believe Cherry had received a fair trial because the jurors had been discussing the case during breaks in the trial in violation of the circuit court's admonishment to not discuss the case; he also reported that some of the jurors had decided that Cherry was guilty before the case was submitted to the jury for consideration. The circuit court held a hearing on these allegations, and the alternate juror testified under oath as to what he had seen and heard. All twelve jurors were called to testify, and seven of the twelve admitted having either heard or participated in conversations about the trial prior to formal deliberations. However, each juror denied that any predeliberation conversations had affected their decision to convict Cherry. Nevertheless, the circuit court found the alternate juror's testimony to be credible that some jurors had made up their minds regarding Cherry's guilt before formal deliberations had begun and granted Cherry a new trial. The State appealed, arguing that Cherry had failed to show how he was prejudiced. The supreme court affirmed the grant of a new trial, citing, in part, *Resko*, *supra*, holding that the circuit court, as the determiner of witness credibility, was faced with evidence that the jurors had prematurely discussed the facts and evidence of the

case, and some jurors had prematurely formed conclusions about Cherry's guilt and discussed their opinions with other jurors, which supported a finding of prejudice.

In the present case, there was no evidence that the alternate juror had spoken with anyone on the jury about the case—just allegations she had spoken to her father after the first day of trial. Her father, in turn, texted the sheriff to inquire if there was a possibility she could be removed from serving as an alternate juror. Here, unlike the situation in *Resko* and *Cherry*, all of the jurors denied that anyone had approached them and talked about the case or that they had talked to anyone about the case. Furthermore, the alternate juror who had improperly talked to her father was excused as an alternate juror and did not participate in Warren's trial. When a juror violates the circuit court's admonition to refrain from discussing the case, there is no prejudice when that juror is excused and there is no evidence of misconduct by the remaining jurors. *See Holsombach v. State*, 368 Ark. 415, 246 S.W.3d 871 (2007). Warren failed to show how he was prejudiced by the alternate juror's misconduct. Accordingly, we hold that the circuit court did not abuse its discretion in denying Warren's motion for mistrial.

Affirmed.

GLADWIN and MURPHY, JJ., agree.

*Hancock Law Firm*, by; *Sharon Kiel*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jacob H. Jones*, Ass't Att'y Gen., for appellee.