Stephen WATKINS and Michael Watkins *v.* TAYLOR
SEED FARMS, INC.

87-337                                    748 S.W.2d 143

Supreme Court of Arkansas
Opinion delivered April 25, 1988

*Howard & Howard,* by: *William B. Howard,* for appellant.

*Barrett, Wheatley, Smith & Deacon,* and *Butler & Hickey, Ltd.,* for appellee.

Tom Glaze, Justice. This case arises from a jury verdict against the appellants in their suit against the appellee for causing appellants' crop failure. Appellants had alleged that the appellee negligently commingled and mislabeled appellants' seed with a late maturing variety of seed. Appellants' appeal is limited to the trial court's denial of their motion for a new trial, wherein they argue the trial judge erred in refusing to hear and consider testimony concerning certain disparaging remarks about appellants' attorney made by two jurors during deliberations. Although appellants set out three points on appeal, all three center on whether the trial court was required to consider such testimony pursuant to A.R.E. Rule 606(b). We find no error and therefore affirm.

In support of their offer of proof, appellants included an affidavit and testimony of a juror, John Seymour, who stated that two female jurors made the following comments in the presence of the entire jury: (1) The first woman said, "W.B. 'Tuffy' Howard, (appellants' attorney), got custody of some children for a man and after the man got custody of the children, he murdered them." (2) A second woman replied, "Yes, that's the kind of man he is." These two jurors, whom Seymour claimed had made the remarks, also testified as a part of appellants' offer of proof. The first one, Mary Seale, denied having made any statements about Howard, but did remember hearing someone make them. The second juror, Donna Cornelison, testified that the jurors had discussed the attorneys but that she did not make nor recall any remarks, as those described by Seymour, having been made in the presence of the jury.

Rule 606(b) provides that upon an inquiry into the validity of a verdict, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything on the juror's mind or emotions. However, the rule contains the following exception: "[B]ut a juror may testify on the questions whether the extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." A.R.E. Rule 606(b). We have

stated that the purpose of the rule is to attempt to balance the freedom of the secrecy of jury deliberations on the one hand with the ability to correct an irregularity in those deliberations on the other. *Borden* v. *St. Louis Southwestern Ry. Co.*, 287 Ark. 316, 698 S.W.2d 795 (1985).

■ Appellants contend that the remarks attributed to the two jurors constituted extraneous prejudicial information and required the trial judge to receive and consider the proffered testimony. We disagree. Our provision is identical to Rule 606(b) of the Federal Rules of Evidence. In its Report on the Federal Rules of Evidence, the House Judiciary Committee referred to extraneous prejudicial information as being, for example, a radio newscast or a newspaper account. *See* Fed. Rules Evid. Rule 606; *B and J Byers Trucking Inc.* v. *Robinson*, 281 Ark. 442, 665 S.W.2d 258 (1984). The Committee's commentary implicitly reflects that extraneous prejudicial information is meant to encompass outside information being brought to the attention of the jurors concerning some issue or matter in the action pending before the court. Such a situation occurred in *Borden*, wherein we upheld the trial court's granting of a new trial and finding of extraneous-prejudicial information. 287 Ark. 316, 698 S.W.2d 795. In that case, jurors, despite contrary instructions by the court, went to the accident scene and reported their findings to fellow jurors. However, this court has shown a reluctance to invade the sanctity of the jury room in order to impeach a jury's verdict and has refused to do so even on facts similar to the ones in *Borden*. For example, in *Robinson*, we affirmed the trial court's denial of a new trial and finding of no extraneous-prejudicial information, when a juror, who had not been cautioned against visiting the accident scene, proceeded to visit the scene and reported his impression or opinion of what he saw to the other jurors. 281 Ark. 442, 665 S.W.2d 258. Because the accident scene was a public highway that was open to everyone's inspection and the juror had not talked to anyone when he went to the scene, this court agreed with the trial court that no extraneous information existed.

Appellants cite *Lewis* v. *Pearson*, 262 Ark. 350, 556 S.W.2d 661 (1977), which clearly involved a situation different from those posed in *Borden* and *Robinson*, as well as the one at hand. While *Lewis* involved an accident and a suit for personal injuries,

the issue involving Rule 606(b) arose because the action involved a white plaintiff and a defendant who was black. Sometime during the court's proceeding, the court's bailiff discussed his handling of eviction notices with one member of the all-white jury and was overheard to say, "Yes, most of them are black, it seems they all feel like the world owes them something." In reversing the trial court's failure to grant a new trial, this court concluded that because of the close relationship between the bailiff and the court itself, any action on the part of the bailiff concerning the jury should be subject to close scrutiny by the court.

In *Lewis*, the trial court's bailiff, an officer of the court, was the source of the outside or extraneous prejudicial information and that information was directed at one of the parties to the pending action. In the present case, the statements attributed to the two jurors were not directed at the appellants or the cause they championed. In fact, Seymour testified that the juror, who made the comment about Mr. Howard, "did not advance that as a reason not to find for plaintiffs [appellants]."

■ In conclusion, we note that, in their motion for a new trial, the appellants alleged not only that extraneous information prejudiced the jury but also that the jurors, making the remarks, were untruthful when failing on voir dire to respond to questions as to whether they knew the appellants' attorney or knew of any reason they could not give the appellants a fair and impartial trial. The fact that a juror may have *heard* of appellants' attorney and some case in which he may have been involved does not equate with the juror *knowing* the attorney. In this respect, it would be somewhat speculative to say that the jurors' silence on voir dire was due to untruthfulness on their part.

■ We can appreciate the appellants' and their attorney's concern when confronted with charges that suggest a juror or jurors could have harbored some hidden, personal bias or prejudice which had nothing to do with the actual merits of the cause to be decided. Nonetheless, Rule 606(b) ensures that jury deliberations should remain secret, unless it becomes clear that the jury's verdict was tainted by a showing of extraneous prejudicial information or some improper outside influence. The evidence the appellants proffer here is not included in the exception under Rule 606(b), and, therefore, allowing the testi-

mony, we believe, would violate the public policy that protects the privacy of the jury room.

Because we find no merit in appellants' argument, we affirm.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. Although the facts of the case are not important to this dissent, I'm compelled to say that as I view the facts the case was almost open and shut against the appellee. The jury must have decided the case upon extraneous matters because there is no logical justification for the fact that the appellee sold the appellants LaBelle rice but the seed produced Star Bonnet plants. The latter brand matures much later than LaBelle. The jury's finding, which I consider to be completely contrary to the facts, lends credence to the argument that the verdict should be set aside because the jury considered extraneous prejudicial information.

The basis for this dissent is that there is clear evidence before this court that the verdict was not decided on the issues and evidence presented, but rather on the opinion of at least two jurors that W.B. "Tuffy" Howard was an unscrupulous and mean attorney. ARE Rule 606(b) provides that after a trial a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was brought to bear upon any juror. The juror's statement quoted in the majority opinion indicated that "Tuffy" Howard had helped a man get custody of his children for the purpose of murdering them. The second juror agreed with the first juror that Howard was that kind of a man. Most certainly such information was not properly before the jury. The primary issue to be decided was whether the rice seeds were LaBelle or Blue Bonnett. The expressed negative reputation of the attorney was unquestionably extraneous prejudicial information.

Even if "Tuffy" Howard had earned the reputation of being a rough and tough attorney, it was not evidence which should have been considered by the jury in deciding his client's case.

The analysis set forth in the majority opinion would probably go so far as to prohibit an inquiry into whether a juror had been bribed. I think the entire court would agree that there would not be a fair jury trial under such circumstances.

For the reasons stated above, I think the case should be reversed and remanded for a trial before a fair and impartial jury.