Bonita WITHERSPOON v. STATE of Arkansas

CR 95-537                                          909 S.W.2d 314

Supreme Court of Arkansas
Opinion delivered November 6, 1995

*Herbert T. Wright, Jr., P.A.*, by: *Herbert T. Wright, Jr.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Justice. Appellant Bonita Willis Witherspoon appeals her conviction for criminal contempt of court in connection with her service as a juror in the capital murder trial of Ledell Lee. She raises two points on appeal: (1) the evidence is insufficient to support the contempt of court conviction and (2) the trial court erred in allowing jurors in the Ledell Lee case to testify regarding jury deliberations. Appellant's arguments are without merit, and we affirm.

Appellant was seated as a juror on October 3, 1994, for the

capital murder trial of Ledell Lee. Judge Chris Piazza declared a mistrial on October 7, 1994, because the jury reported it was deadlocked eleven to one; appellant cast the sole vote for acquittal. On October 13, 1994, the prosecuting attorney filed a motion for contempt in which he alleged that appellant failed to disclose on the jury information sheet that she had a prior felony conviction, failed to disclose, when questioned by counsel and the court, that she possessed independent outside knowledge of the case, including familiarity with the defendant's family and with witnesses, and failed to disclose that she had been represented in a criminal prosecution by one of Ledell Lee's defense attorneys, Jerry Sallings. A bench trial was held on December 13, 1994, to determine whether appellant failed to disclose that she possessed independent outside knowledge of this case; the charge of failure to disclose a felony conviction was not pursued at trial. Appellant was found to be in contempt of court and sentenced to ten days imprisonment.

### a. Sufficiency of the evidence.

█ Appellant first argues that the evidence is insufficient to support the contempt of court conviction. At the bench trial, the appellant did not question the sufficiency of the evidence. Consequently, the state asserts appellant has not preserved this issue for appeal. However, it is not necessary for a defendant to challenge the sufficiency of the evidence in a bench trial in order to raise the issue on appeal. *See Strickland* v *State*, No. CR 94-879 (November 6, 1995).

█ In finding the appellant to be in contempt of court, the trial court concluded that "Ms. Witherspoon has defrauded this court." A criminal contempt citation must be based on evidence showing guilt beyond a reasonable doubt. *Jolly* v. *Jolly*, 290 Ark. 352, 719 S.W.2d 430 (1986). In an appeal of a case of criminal contempt, we view the record in the light most favorable to the decision of the trial judge and sustain that decision if it is supported by substantial evidence. *Carle* v. *Burnett*, 311 Ark. 477, 845 S.W.2d 7 (1993). Substantial evidence is evidence of a sufficient force and character to compel a conclusion one way or another, forcing the mind to pass beyond suspicion or conjecture. *Gatlin* v. *State*, 320 Ark. 120, 895 S.W.2d 526 (1995). Finally, decisions as to the credibility of the witnesses are to be

made by the trier of fact. *Silvey Cos.* v. *Riley*, 318 Ark. 788, 888 S.W.2d 636 (1994).

At trial, the juror information sheet which appellant signed prior to her selection as a juror was admitted. It provided: "I do solemnly swear (or affirm) that the statements contained herein are true and that I have given true and perfect answers to the above questions asked touching my qualifications to serve as a grand or petit juror, so help me God." The oath for new jurors to which appellant was sworn was also introduced and provided: "Do you, and each of you, solemnly swear or affirm, that you will well and truly try each and all of the issues submitted to you as a juror, and a true verdict render, according to the law and the evidence, so help you God?" In addition, a partial transcript of the Ledell Lee trial was admitted. At the Ledell Lee trial, the prospective jurors were asked if anyone knew a "Hubert Anderson from Little Rock." Appellant did not respond. The jurors were also asked: (1) if they had "read anything, seen anything or heard anything on the radio?" (2) "Is there any reason that you couldn't give both parties to this case a fair trial?" and (3) "Anybody else know anybody? Anything that would keep you from being here?" Again, appellant did not respond. In addition, the jurors were asked during the trial whether "anybody had been compromised by anything you may have read or heard about this case? . . . [H]ave any of you been talked to by a witness or something that would compromise you in any way?" Appellant never responded.

At appellant's trial, Mr. Hubert Anderson, a private investigator, testified that he had been employed by attorneys representing Ledell Lee. Mr. Anderson stated that he knew appellant because he had dated her sister for about six years. Mr. Anderson testified he saw appellant once every three or four months, and talked with her on the morning of the jury selection for the Ledell Lee trial. Mr. Anderson also stated that he usually goes by the name "Andy," and appellant refers to him as Andy. He further stated that he did not give appellant any information regarding the Ledell Lee case. Although Anderson was listed as a witness, he did not testify at the Ledell Lee trial.

Mr. Jerry Sallings, one of Ledell Lee's attorneys, testified that while he was with the public defender's office he represented

appellant on a theft by receiving charge in 1991. He stated that he represented her at a plea and arraignment, September 16, 1991, and at trial, September 23, 1991. Sallings testified he did not recognize appellant when she was called as a juror in the Ledell Lee case.

An alternate juror for the Ledell Lee case testified she saw appellant in the hall talking with an individual who had been on the witness stand and with Ledell Lee's sister. She testified that she did not hear what was said, and did not report the conversation to court personnel. One of the jurors from the Ledell Lee trial testified that appellant said her brother-in-law was a private investigator and had worked on the Ledell Lee case; the juror further stated: "It seems like she said her brother-in-law told her something about it."

Another juror testified he saw appellant talking to someone in an office, while Ledell Lee's sister was in the office. This juror was not sure appellant was talking to Ledell Lee's sister, because there was a third person in the room. He also stated that after the jury retired to deliberate, appellant indicated "she knew somebody that had investigated the case the first time it was tried." He stated "I think she said that it was her brother-in-law." He further testified that on the second day of deliberations, the appellant read a lengthy statement to the other jurors in which she asserted that the justice system was biased and racist, and she wasn't going to have a part in that, and that officers who participated in the Lee investigation had all been promoted. Finally, he testified that after reading her statement, appellant turned her chair away from the rest of the jurors and began to read a book out loud, which was disruptive to the deliberations.

Another juror testified that after appellant was elected jury foremen she stated that she had worked with one of the prosecutor's witnesses, a man named McCullough, and questioned why he was at home the day of the murder, and not at work. One juror also testified that appellant stated she had a brother-in-law who worked for one of the defense attorneys, and testified that appellant said she knew the private investigator. Finally, a juror testified she saw appellant talking to a prosecution witness during the trial, and she heard appellant say "Hi. How are you doing?" to Ledell Lee's brother.

■ An act is contemptuous if it interferes with the order of the court's business or proceedings, or reflects upon the court's integrity. *Hodges* v. *Gray*, 321 Ark. 7, 901 S.W.2d 1 (1995). The inherent power to punish for contempt should never be exercised except where the necessity is plain and unavoidable if the authority of the court is to continue. *Id.* The court's contempt proceedings are to preserve the power and dignity of the court, to punish for disobedience of orders, and to preserve and enforce the rights of the parties. *Id.* Viewing the evidence in the light most favorable to the decision of the trial judge, we hold the contempt finding is supported by substantial evidence that Ms. Witherspoon had prior knowledge of the case which prevented a fair trial.

### b. Testimony of jurors.

■ Appellant argues that the trial court improperly allowed her fellow jurors to testify concerning statements she made during jury deliberations, contrary to the United States Supreme Court's holding in *Clark* v. *United States*, 289 U.S. 1 (1933), that a *prima facie* case of juror wrongdoing must first be shown and only then will jury discussions be admissible as corroborative evidence, to supplement and confirm the case that would exist without them. We have recognized that the sanctity of jury deliberations is a fundamental precept of our adversary system. *National Bank of Commerce* v. *HCA Health Ser.*, 304 Ark. 55, 800 S.W.2d 694 (1990). However, in this instance, the appellant's argument must fail.

■ Although the trial court found that a *prima facie* case had been made from the evidence extraneous to the jury room deliberations, appellant argues that the only extraneous evidence presented was that Mr. Sallings had previously represented her, and thus the jurors could only have testified to show appellant had knowledge of this prior representation. Appellant overlooks the testimony of Hubert Anderson and the testimony of the jurors concerning appellant's conversations with witnesses and members of the defendant's family outside the jury room. However, more importantly, the appellant in *Clark* was convicted in federal district court and the rule enunciated by the Supreme Court in 1933 applied to a proceeding in federal court. We have said that the Arkansas Rules of Evidence govern proceedings in the courts of this state. Ark. R. Evid. 101; *See Ricarte* v. *State*, 290 Ark. 100, 717 S.W.2d 488 (1986).

■ Appellant also asserts the ruling in *Clark* is consistent with Fed. Rule Evid. 606(b); however, A.R.E. Rule 606(b) is nearly identical to the federal rule and provides:

> (b) Inquiry into Validity of Verdict or Indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to asset [assent] to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received, *but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.* (Emphasis added.)

This rule provides that jurors may testify in an inquiry into the validity of a verdict. Of course, no verdict was reached in the instant case, but we hold that the rule should apply whether a verdict is reached or a mistrial declared. This rule establishes an extraneous information exception which allows jurors to testify that one or more members of the jury brought to a trial specific personal knowledge about the parties or controversy or acquired such knowledge from sources outside the courtroom during the trial or deliberations. Christopher B. Mueller, 3 Federal Evidence § 249 (2d. ed. 1994); *see also Watkins* v. *Taylor Seed Farms, Inc.*, 295 Ark. 291, 748 S.W.2d 143 (1988). This is precisely what occurred in the instant case, and the trial court properly allowed jurors to testify about the statements made by appellant during the course of the deliberations.

The conviction is affirmed.

GLAZE AND CORBIN, JJ., concur, *see Strickland* v. *State*, 322 Ark. 312, 909 S.W.2d 318 (1995)(DUDLEY, CORBIN, and GLAZE, JJ., concurring).