SUNRISE ENTERPRISES, INC., Kenny Cain, John Smith, and Doris Butler *v.* MID-SOUTH ROAD BUILDERS, INC. and M. Gregory Jackson

98-898 987 S.W.2d 674

Supreme Court of Arkansas
Opinion delivered March 18, 1999

*Killough & Ford*, by: *Danny W. Glover*, for appellant Sunrise Enterprises and Kenny Cain.

*John Biscoe Bingham, P.A.*, by: *John Biscoe Bingham*, for appellant Doris Butler.

*Pike & Bliss*, by: *George E. Pike, Jr.*, and *Deborah Pike Bliss*, for appellant John Smith.

*Christopher C. Mercer, Jr.*, for appellee.

D ONALD L. CORBIN, Justice. This case involves an issue of juror misconduct. Appellants Sunrise Enterprises, Inc., Kenny Cain, John Smith, and Doris Butler appeal the order of the Woodruff County Circuit Court granting a new trial to Appellees Mid-South Road Builders, Inc., and M. Gregory Jackson. The issue presented is whether the trial court erred in granting a new trial on the ground that some of the jurors were exposed to extraneous legal materials during their deliberations. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(4) and (5), as this appeal is one of substantial public interest requiring further development of the law. We find no error and affirm.

Appellees filed suit against Appellants for replevin and conversion of various items of road-building equipment that had been stored on Butler's property pursuant to an agreement between Jackson and Butler's husband, the late Dr. John Butler. Butler counterclaimed for rent that Appellees allegedly owed her in exchange for storing the equipment. During the trial, which was held over several non-consecutive days in November 1997, Butler attempted to defend the suit by arguing that she had the right to sell Appellees' equipment under Ark. Code Ann. § 18-16-108 (Supp. 1997). Indeed, during opening statement, Butler's attorney, Mr. Bingham, read section 18-16-108 to the jurors. At the conclusion of the evidence, however, the trial court determined that section 18-16-108 was not applicable to the evidence presented and refused to instruct the jury on that statutory provision. The jury returned verdicts in favor of Appellants, but did not award damages to Butler on her counterclaim for rent.

Appellees filed a motion for judgment notwithstanding the verdict and for new trial, alleging numerous errors including juror misconduct. A hearing was held on December 19, 1997. Testimony from five jurors revealed that one of the jurors brought a document from home that contained a provision of law similar to section 18-16-108, upon which the trial court ultimately refused to instruct the jury.

One of the jurors, Carolyn Kittrell, testified that she brought a piece of paper from home and shared it with some of the jurors.

She testified that the document was part of a 1982 real estate contract that she had on some rent houses. The part she brought into the jury room had to do with the landlord's right to sell property left by the tenant after sixty days. She indicated that she retrieved the paper to help her clarify her notes regarding the provision of law read by Mr. Bingham. She stated that she did not read the paper to anyone, but that Juror Peebles read it. She explained that she retrieved the paper prior to the time that the judge instructed them not to bring in any outside documents. She admitted, however, that the paper remained inside the jury room during deliberations. The trial judge then inquired of Juror Kittrell whether any of the jurors had a copy of the law that Mr. Bingham read in his opening statement:

> THE COURT: . . . I heard you say, in response to Mr. Mercer's question, that the Arkansas law which was read by Mr. Bingham on the first day of the trial —
>
> Ms. KITTRELL: Yes.
>
> THE COURT: — will you clarify that for me?
>
> Ms. KITTRELL: I didn't —
>
> THE COURT: Someone read that to you in the jury room?
>
> Ms. KITTRELL: No. He read something about the Arkansas law regarding abandoned property the first day of the trial and I did not get it through my notes. I just wrote Arkansas law. Now, whether the part of my contract was the law, at that time, I don't know. It was just part of my real estate contract and *I thought it sounded like what he had read*, but I couldn't be sure. [Emphasis added.]

Immediately after Juror Kittrell testified, the trial judge called the attorneys to the bench and revealed that he had overheard some of the jurors' deliberations in this case. He explained that due to the proximity of the judge's chambers to the jury room, he had been able to hear some of the jurors' discussions. Particularly, the trial judge recalled hearing the voice of a young male juror reading what the judge believed to be section 18-16-108. The

hearing then continued and testimony was taken from four additional jurors.

The other four jurors testified that they saw the document brought in by Juror Kittrell. Three of them remembered that the document was read and discussed by some of the jurors; the fourth juror could not remember whether the document was discussed, but she did recall hearing it read to the other jurors. Glenda Calhoun, the jury's foreperson, testified that the document was the same thing that Butler's attorney read to them in his opening statement. Juror Calhoun also stated that Juror Kittrell indicated to them that the paper reflected the law.

In an order entered on December 31, 1997, the trial court granted the motion for new trial. The trial court found that Juror Kittrell carried into the jury room a document, which she described as a contract that related to an incident where some property was abandoned and sold, and exhibited it to Juror Peebles. The trial court found further that Juror Peebles read the document loud enough that it was called to the attention of the other jurors. The trial court concluded:

> The record made herein, has several references to the Arkansas Law read by Mr. Bingham on the first day of trial. *It is clear that the jury was exposed to extraneous prejudicial information and further that this information was improperly brought to the jurors [sic] attention.* [Emphasis added.]

Appellants argue that the trial court erred in granting a new trial on the basis of juror misconduct. They contend that the trial judge's ruling was erroneously based upon what he thought he overheard during the jurors' deliberations, and not on the actual testimony of the jurors. Alternatively, they argue that even if there was juror misconduct, a new trial was not warranted because Appellees failed to demonstrate that they were prejudiced by the misconduct. We disagree.

 In reviewing a trial court's grant of a new trial, the test is whether the trial court abused its discretion. *Razorback Cab of Ft. Smith, Inc. v. Martin*, 313 Ark. 445, 856 S.W.2d 2 (1993).

"A showing of abuse is more difficult when a new trial has been granted because the party opposing the motion will have another opportunity to prevail." *Id.* at 446, 856 S.W.2d at 3 (citing *Worthington v. Roberts*, 304 Ark. 551, 803 S.W.2d 906 (1991); *Turrise v. Crane*, 303 Ark. 576, 798 S.W.2d 684 (1990)). When a new trial is requested pursuant to ARCP Rule 59(a) because of juror misconduct, the moving party must show that the party's rights have been materially affected by demonstrating that a *reasonable possibility of prejudice* has resulted from the misconduct. *Diemer v. Dischler*, 313 Ark. 154, 852 S.W.2d 793 (1993). Prejudice in such instances is not presumed. *Id.* To show that extraneous materials were brought to the jurors' attention, the trial judge may properly consider the content of conversations that took place in the jury room. *St. Louis S.W. Ry. v. White*, 302 Ark. 193, 788 S.W.2d 483 (1990).

Generally, it is misconduct for jurors to view reading material without the knowledge of the court and the parties; however, prejudice does not occur in every case. *Franks v. State*, 306 Ark. 75, 811 S.W.2d 301 (1991). Similarly, allowing the jury to have access to something that has not been admitted into evidence will not necessarily, without more, constitute an abuse of discretion. *Dickerson Constr. Co., Inc. v. Dozier*, 266 Ark. 345, 584 S.W.2d 36 (1979). Thus, the key inquiry when jurors take extraneous material into their deliberations is not whether such action amounts to misconduct, as it clearly does; rather, the pertinent question is whether there was a reasonable possibility that such misconduct resulted in prejudice. We conclude that Appellees have sufficiently demonstrated that a reasonable possibility of prejudice resulted from the misconduct here.

The evidence presented during the hearing demonstrated that at least six of the jurors were exposed to extraneous material during their deliberations. Juror Kittrell admitted that she brought into the jury room a piece of paper representing what she thought was a statement of the law read by Butler's attorney during opening statement. Contrary to Appellants' assertion, it matters not whether the document was a piece of an old real estate

contract or a copy of section 18-16-108. What is significant is that the jurors discussed and considered extraneous information pertaining to a landlord's ability under the law to sell property abandoned by a tenant, an issue upon which the trial court specifically refused to give an instruction. It is of no avail to Appellants that the five jurors who testified indicated that their verdicts were unaffected by the paper; the misconduct is apparent from the fact that outside legal material was taken into the jury room and discussed by at least some of the jurors during deliberations. *See* 58 AM. JUR. 2D *New Trial* § 248 (1989) (providing that if the extraneous material is of such a nature or character as to influence the jury against the unsuccessful party or in favor of the prevailing party, and it is shown to have been improperly in the jury room during deliberations and read by the jurors, a new trial should be granted even though the jurors may think that they were not influenced by that material). The fact that the very law ruled inapplicable by the trial court ended up in the jury's deliberations, which ultimately produced a verdict for Appellants, demonstrates a reasonable possibility of prejudice to Appellees.

██ We are not persuaded by Appellants' argument that the trial judge abused his discretion by granting a new trial based on what he overheard during the jury's deliberations. To the contrary, the trial judge's order demonstrates that his decision was based on the testimony of the jurors indicating that they had discussed an extraneous document that purported to be the law read by Mr. Bingham. Moreover, because they failed to object during the hearing below, Appellants have not preserved any argument regarding the trial judge's statement that he overheard a juror reading the law, as opposed to a real estate contract. To preserve a point for appeal, a proper objection must be asserted at the first opportunity. *Edwards v. Stills*, 335 Ark. 470, 984 S.W.2d 366 (1998). That was not done here. We thus affirm the trial court's judgment.