2012 Ark. 428

**Scott BLAKE, Appellant**

v.

**Jonathan SHELLSTROM, Robin Whitten, and Metropolitan Property and Casualty Insurance Company, Appellees.**

No. 12–36.

Supreme Court of Arkansas.

Nov. 15, 2012.

Elton A. Rieves III & Associates, by: Elton A. Rieves III, West Memphis, for appellant.

Watts, Donovan & Tilley, P.A., by: Jim Tilley and Bethany A. Pike, Little Rock, for appellee Jonathan Shellstrom.

Matthews, Sanders & Sayes, Little Rock, by: Doralee Chandler and Roy Gene Sanders, for appellee Robin Whitten.

JIM GUNTER, Justice.

Appellant Scott Blake appeals from the circuit court's denial of his motion for new trial. Appellant initially appealed the denial to the court of appeals, which af-

firmed, *Blake v. Shellstrom*, 2012 Ark. App. 28, 388 S.W.3d 57, *reh'g denied* (Feb. 12, 2012), and this court granted his petition for review. When we grant a petition for review, we consider the appeal as though it had originally been filed in this court. *E.g., Hempstead Cnty. Hunting Club, Inc. v. Ark. Pub. Serv. Comm'n*, 2010 Ark. 221, 384 S.W.3d 477. On appeal, appellant argues that the circuit court erred in denying his motion for new trial based on juror misconduct and an insufficient verdict. We affirm.

This case arises out of a personal-injury action brought by appellant against appellees Jonathan Shellstrom, Robin Whitten, and Metropolitan Property and Casualty Insurance Company. Appellant and appellees Shellstrom and Whitten were involved in a three-vehicle |₂automobile accident that occurred on Highway 66 in Stone County on May 5, 2008. In a legal passing zone, appellee Whitten attempted to legally pass appellant just as appellee Shellstrom pulled out of his driveway directly into the path of appellee Whitten. Appellees collided, causing appellee Whitten's vehicle to strike appellant's truck. Appellant and his passenger son were injured and sued appellees for their injuries.

During a two-day jury trial held on January 13 and 14, 2011, appellant's physician testified that appellant had a sublaxation of the vertebrae in his neck, suffered a decreased range of motion of the cervical spine of ten to fifteen percent, and that his injuries are permanent. Appellant testified that his neck "pops" and that he suffers from low-level pain and stiffness.

Prior to and during the trial, the parties thoroughly argued whether the fact that appellant had health insurance could be introduced into evidence. The trial judge ruled that so long as appellant did not "open the door," appellees would be prohibited from putting on evidence of, or referring to, appellant's health insurance coverage. Accordingly, no evidence was introduced that appellant's medical expenses were paid by a third party. Instead, appellant gave uncontroverted testimony that, as a result of the accident, he incurred $2089 in lost wages and $8284.85 in medical expenses. Appellant's physician testified that appellant would need to have epidural steroid injections, every one to three years, for the rest of his life and that these injections cost $2400.

The case was submitted to the jury on interrogatories and a general verdict form. The jury returned a verdict in favor of appellant against appellee Shellstrom in the amount of |₃$10,400. Appellant's son received a verdict against appellee Shellstrom for $10,000. The circuit court entered final judgment on February 2, 2011.

On February 4, 2011, appellant filed a motion for new trial pursuant to Arkansas Rule of Civil Procedure 59. In that motion, appellant asserted that he was entitled to a new trial based on jury misconduct, insufficient damages, and a verdict contrary to the preponderance of the evidence. Attached to the motion were the affidavits of Keith Huyard and Rebecca Brown, who served as foreperson and juror respectively in appellant's trial.

Brown's January 19, 2011 affidavit reads as follows.

I am Rebecca Ann Brown who served as a member of the jury in the above styled case. At the close of the case, the members of this jury retired to the jury room to reach a verdict(s). During the course of that deliberation at least two of the jurors stated emphatically that they had been federal employees and knew as a matter of fact that Scott Blake, working as a postmaster for the federal government, would have health insurance by reason of his employment which would cover most if not all of his

medical bills. At one point during the deliberations I wrote a note directed to the judge asking whether or not the jury should consider health insurance in our deliberations regarding Scott Blake's medical bills. That note was passed to the foreman of the jury but was never delivered to the bailiff to be given by him to the presiding judge.

The verdict which was returned by the jury did not take into consideration that medical expenses incurred by Scott Blake in the past and to be incurred by him in the future because of the statements made by one or more of the jurors to the effect that those medical bills incurred and to be incurred by Scott Blake would be paid by health insurance furnished to him by his employer, the U.S. Postal Service. I and one other juror did not sign the verdict form since it was our belief that it was not in accordance with the evidence produced in the case and contrary to the instructions of law given by the Court.

Huyard's January 27, 2011 affidavit reads as follows.

I am Keith Huyard and was the foreperson of the jury in the above styled case. At the close of the case, the members of this jury retired to the jury room to reach a verdict(s). During the course of that deliberation at least two jurors stated emphatically that they had been federal employees and knew as a matter of fact that Scott Blake, working as a postmaster for the federal government, would have health insurance by reason of his employment which would cover most if not all of his medical bills. By reason of this, the jury felt that the medical bills being claimed by him, both past and future, would be paid by insurance. Further, the jury felt that the reason Mr. Blake had not received the epidural injections was that he did not want or need to get them and not because he could not afford them.

There is no question in my mind that had the jury not believed that Scott Blake had health insurance which would cover his medical bills, both past and future, a much larger award would have been given to him.

At one point, juror Rebecca Brown passed a note to me to be given to the bailiff which in turn was to be given by the bailiff to the Court asking whether or not the jury should consider health insurance in our deliberations regarding Scott Blake's medical bills. This note was not given to the bailiff by me in that I told the jury that, in my opinion, the Court would not answer the question posed but would simply tell us to return a verdict based on the facts in evidence and the law given to us. After I told the jury that, a vote was taken and we all agreed that there was no need to give the note to the bailiff to be taken to the Court.

Simply put, the verdict which was returned by the jury did not take into consideration the medical expenses incurred by Scott Blake in the past and to be incurred by him in the future because of our belief that those bills would be paid by health insurance furnished to him by his employers, the U.S. Postal Service.

From these affidavits, appellant argued to the trial judge that (1) the jury's consideration of appellant's health insurance was misconduct sufficient to require a new trial and (2) the $10,400 awarded in damages was unrealistic, illegitimate, and not based on the evidence. Appellee Shellstrom opposed appellant's motion asserting that (1) the juror affidavits were inadmissible under Arkansas Rule of Evidence 606, (2) the general verdict form precluded any review of the jury's findings on damages, and (3)

appellant waived his right to complain on this point by failing to request the collateral-source instruction, AMI Civ. 2215, and poll the jury. Appellee Whitten, against whom no verdict was entered, adopted appellee Shellstrom's argument that the juror affidavits were inadmissible. Appellee Whitten also maintained, however, that even if the trial judge were to grant a new trial based on juror misconduct, the no-liability verdict in favor of appellee Whitten should be allowed to stand and the new trial be granted only as to appellee Shellstrom. Appellee Metropolitan adopted Shellstrom's response in its entirety.

On March 3, 2011, the trial judge held a hearing on appellant's motion for new trial. No testimony was received, and the parties orally argued their respective positions. At the close of the hearing, the trial judge indicated that he was not yet ready to rule on the motion and stated that he would issue a written order after further consideration. On March 11, 2011, appellant filed a notice of appeal noting that his motion for new trial was deemed denied as of March 7, 2011, pursuant to Arkansas Rule of Civil Procedure 59(b). On March 16, 2011, the trial judge entered a one-sentence order denying appellant's motion for new trial.

For his first point on appeal, appellant asserts that the jury's consideration of his employer-provided health insurance in calculating his damages entitled him to a new trial under Arkansas Rule of Civil Procedure 59(a)(2). Initially, appellant observes that there was no evidence presented at trial of the existence of insurance coverage or the payment of insurance benefits. He then reasons that several jurors' statements assuring fellow jurors that appellant's past and future medical expenses would be paid by his insurance company was extraneous information that influenced the jury to reduce its damages award.

Appellant contends that this introduction of extraneous information into deliberations rises to the level of jury misconduct and that the trial judge erred by denying his motion for new trial.

Appellees, on the other hand, argue that the juror affidavits attached to appellant's motion for new trial were the fruits of an improper inquiry into the jury's verdict and therefore inadmissible under Arkansas Rule of Evidence 606(b). Alternatively, appellees maintain that even if the juror affidavits are admissible, they are merely speculative assertions insufficient to show a reasonable possibility of prejudice. Finally, appellees also assert that appellant should not be heard on this point because he failed to request that the trial judge instruct the jury on the collateral source doctrine. Accordingly, appellees contend that the trial judge acted within his discretion in denying appellant's motion for a new trial.

Arkansas Rule of Civil Procedure 59(a)(2) provides that juror misconduct is a proper basis for granting a new trial. See *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 441, 47 S.W.3d 866, 873 (2001). The decision whether to grant a new trial under Rule 59(a)(2) is discretionary with the trial judge who will not be reversed absent an abuse of that discretion. *Id.* The burden of proof in establishing jury misconduct is on the moving party who must demonstrate that a reasonable possibility of prejudice has resulted from the misconduct. *Sunrise Enters., Inc. v. Mid–S. Rd. Builders, Inc.*, 337 Ark. 6, 11, 987 S.W.2d 674, 676 (1999). Prejudice in such instances is not presumed. *Id.*

Although juror misconduct may require a new trial, the evidence of that misconduct must be admissible under Arkansas Rule of Evidence 606(b). That rule is entitled "Inquiry Into Validity of Verdict or Indictment" and provides as follows:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as to influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received, but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

Ark. R. Evid. 606(b) (2012). The purpose of Rule 606(b) is to attempt to balance the freedom of the secrecy of jury deliberations with the ability to correct an irregularity in those decisions. *State v. Osborn,* 337 Ark. 172, 175, 988 S.W.2d 485, 486 (1999) (citing *Watkins v. Taylor Seed Farms, Inc.,* 295 Ark. 291, 748 S.W.2d 143 (1988)). The rule discourages harassment by losing parties attempting to set aside the verdict; encourages free and open discussion among jurors; reduces incentives for jury tampering; promotes verdict finality; and maintains the viability of the jury as a judicial decision-making body. *See id.* at 175–76, 988 S.W.2d at 486–87 (citing 75B Am.Jur.2d, Trial § 1900 (1992), revised at 75B Am.Jur.2d Trial § 1625 (2007)).

Appellant contends that the jurors' interjection of insurance coverage into deliberations falls under the "extraneous prejudicial information" exception of Rule 606(b) and was therefore admissible in support of his motion for new trial. Appellees counter that the jurors' statements regarding appellant's health insurance was not extraneous information but rather speculative beliefs based on their own prior knowledge and life experiences. Therefore, appellees maintain that the affidavits run afoul of Rule 606(b)'s prohibition on inquires into the effect of anything upon a juror's mind or emotions.

Our most recent decision interpreting the extraneous-information exception is *Witherspoon v. State,* 322 Ark. 376, 909 S.W.2d 314 (1995), the relevant facts of which are as follows. Bonita Witherspoon served as a juror in the capital murder trial of Ledell Lee. *Id.* at 377–78, 909 S.W.2d at 315. After the jury reported that it was deadlocked, with Witherspoon casting the sole vote for acquittal, the circuit court declared a mistrial. *Id.* at 378, 909 S.W.2d at 315. Shortly thereafter, the prosecution filed a motion for contempt alleging, inter alia, that Witherspoon failed to disclose that she possessed independent outside knowledge of the case and that she knew Lee's family and several of the witnesses. *Id.* At Witherspoon's criminal contempt trial, the trial judge allowed the other jurors to testify about what Witherspoon said throughout the capital murder trial and during deliberations. *Id.* at 381, 909 S.W.2d at 317. On appeal, Witherspoon argued that the jurors' testimony was inadmissible under Rule 606(b). *Id.* at 382, 909 S.W.2d at 317. This court disagreed, noting that the rule's extraneous-information exception "allows jurors to testify that one or more members of the jury brought to a trial *specific personal knowledge* about the parties or controversy or acquired such knowledge from *sources outside the courtroom* during the trial or deliberations." *Id.* at 382, 909 S.W.2d at 317–18 (emphasis added).

In a similar vein, this court's decision in *Watkins v. Taylor Seed Farms, Inc.,* 295 Ark. 291, 748 S.W.2d 143 (1988), explained that the extraneous-information exception

applies when information derived from an outside source is disseminated to the jury. In *Watkins,* two farmers alleged that a seed dealer negligently commingled and mislabeled seed. *Id.* at 291, 748 S.W.2d at 143. Following a defense verdict, the plaintiffs moved for a new trial, proffering a juror's testimony that two jurors made disparaging comments about the plaintiffs' attorney in the presence of the entire jury. *Id.* at 291, 748 S.W.2d at 143–44. The trial judge denied the motion, finding the testimony inadmissible under Rule 606(b). *Id.* at 291, 748 S.W.2d at 143. On appeal, the plaintiffs argued that the juror's remarks fell under the extraneous-information exception. *Id.* at 293, 748 S.W.2d at 144. In affirming, this court held that extraneous prejudicial information is meant to encompass outside information, such as a radio newscast or newspaper account, being brought to the attention of the jury. *Id.* (citing *B. & J. Byers Trucking, Inc. v. Robinson,* 281 Ark. 442, 665 S.W.2d 258 (1984)).

Although *Witherspoon* and *Watkins* provide us with the right question, namely, whether the jurors' statements that appellant's medical expenses would be paid by his employer-provided health insurance was information from an external source, they do not directly answer it. Indeed, other jurisdictions have considered the question and have reached different conclusions. *Compare Marr v. Shores,* 495 A.2d 1202, 1205 (Me.1985) (juror's statement that plaintiffs medical bills were paid by his health insurance was part of deliberative process and not extraneous information) *and Miller v. Breidenbach,* 520 N.W.2d 869, 871 (N.D.1994) (juror's discussion of automobile insurance was an internal aspect of deliberation, not an external effect on the jury) *with Buisker v. Thuringer,* 648 N.W.2d 817, 822 (S.D.2002) (juror who learned of defendant's liability insurance from a state trooper and then relayed that fact to the jury had interjected extraneous information into deliberations) *and Tapia v. Barker,* 160 Cal.App.3d 761, 766, 206 Cal.Rptr. 803 (1984) (jurors' belief that plaintiff's damages for lost wages should be reduced by whatever income plaintiff received from disability or unemployment benefits was misconduct).

Ultimately, however, we are persuaded that the affidavits do not fall within the extraneous-information exception. Despite the fact that the jurors claimed to know "for a fact" that appellant's medical expenses would be paid by a third party, the statements remain bare, speculative assertions. Furthermore, those assertions were not derived from an external source, but instead were based only on several jurors' own personal experiences.

We observe that this holding comports with both *Witherspoon* and *Watkins, supra.* Unlike Bonita Witherspoon, the jurors did not disseminate their personal knowledge of the specific facts of the case to the jury. Like the jurors in *Watkins,* the deliberations involved only the beliefs of the twelve jurors and were not tainted by information derived from an outside source. Finally, we also observe that the jury is a unique institution in our system of government and that the rationale underlying Rule 606(b) counsels in favor of protecting the sanctity of that institution under these circumstances.

■ For his second point on appeal, appellant argues that the trial judge should have granted him a new trial because the jury award was obviously insufficient. Specifically, appellant maintains that his past medical expenses and lost wages totaled $10,374.68 and that the jury's award of an additional $25.32 for future medical expenses and for past and future pain and suffering is unrealistic and illegitimate. Appellees counter that the jury was free to

weigh the evidence and determine the amount of damages that appellant should be awarded.

 Arkansas Rule of Civil Procedure 59(a)(5) provides that error in the assessment of recovery, whether too large or too small, is a proper basis for granting a new trial. *See Garrett v. Brown,* 319 Ark. 662, 666–67, 893 S.W.2d 784, 787 (1995) (citing *Kempner v. Schulte,* 318 Ark. 433, 885 S.W.2d 892 (1994)). In reviewing the adequacy of a jury's award, this court will sustain the trial court's denial of the motion for new trial unless there is a clear abuse of discretion. *Id.* An important consideration in this analysis is whether a fair-minded jury might reasonably have fixed the award at the amount advocated by the appellant. *Id.*

We agree with appellees that it would be improper to question the jury's weighing of the evidence. On one hand, appellant was seriously injured in the accident and surely suffered pain. His physician testified that his back condition is permanent in nature and that he would require regular steroid injections for the rest of his life. On the other hand, appellant testified that he suffered from a relatively low level of pain, went back to work very soon after the accident, and equivocated as to whether he would continue to seek steroid-injection therapy.

 We view the facts in the light most advantageous to appellees. *Luedemann v. Wade,* 323 Ark. 161, 166, 913 S.W.2d 773, 776 (1996). Obviously, the jury may properly assess witness credibility, and there is no strict mathematical formula to be applied in personal-injury cases. *See id.* at 166–67, 913 S.W.2d at 776; *Kempner,* 318 Ark. at 437, 885 S.W.2d at 894. Furthermore, we have frequently held that when it is impossible to know the basis for the jury's verdict, we will not question or theorize about the jury's find-

ings. *E.g., Tyson Foods, Inc. v. Davis,* 347 Ark. 566, 578–79, 66 S.W.3d 568, 576 (2002); *Esry v. Carden,* 328 Ark. 153, 942 S.W.2d 846 (1997); *Jefferson Hosp. Ass'n v. Garrett,* 304 Ark. 679, 804 S.W.2d 711 (1991). Here, damages were awarded on a general-verdict form. Accordingly, this court has no means to understand the jury's calculation of damages, and we decline to indulge in assumptions.

Affirmed; court of appeals opinion vacated.