
# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-15-45

| | |
|---|---|
| ELIZABETH ANN WILLIAMSON, as Administrator of the Estate of Cynthia Frazier, Deceased, and on Behalf of the Wrongful Death Beneficiaries of Cynthia Frazier<br><br>APPELLANT<br><br>V.<br><br>BAPTIST HEALTH MEDICAL CENTER<br><br>APPELLEE | **Opinion Delivered:** FEBRUARY 10, 2016<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, THIRD DIVISION<br>[NO. 60CV–2012–930]<br><br>HONORABLE CHRISTOPHER L. PALMER, JUDGE<br><br>AFFIRMED |

**ROBERT J. GLADWIN, Chief Judge**

This appeal arises out of a pedestrian-vehicle collision that resulted in the death of the pedestrian. Cynthia Frazier was walking across Emergency Drive, a public roadway on the Baptist Health Medical Center (Baptist) campus, to reach her place of employment when she was struck and killed by a vehicle driven by Cassandra Johnson. Elizabeth Ann Williamson, Cynthia Frazier's daughter and the administrator of her estate, sued Baptist for negligence and sought to prove that it negligently failed to protect its employees. The jury rendered a verdict against Baptist. On appeal, Williamson challenges the judgment entered after the jury verdict and the subsequent denial of her motion for a new trial. We affirm.

I. *Facts and Issues on Appeal*

Prior to her death, Cynthia Frazier was an employee at Baptist Health Breast Center in the Hickingbotham Outpatient Center (HOC) on the Baptist campus. Baptist required

that employees working in the HOC park their vehicles in designated employee parking areas. Emergency Drive, a public roadway, separates the employee parking area from the HOC, and the closest employee parking area to the HOC is Lot 13. Although there is a marked crosswalk on Emergency Drive, there is not one near Lot 13.

On February 15, 2011, at approximately 6:27 a.m., Frazier was walking from Lot 13 to the HOC without utilizing a marked crosswalk. While crossing Emergency Drive, Frazier was struck by a vehicle driven by Cassandra Johnson, another employee of Baptist who had just completed her overnight work shift. Frazier sustained grave injuries and was taken to the emergency room at Baptist for treatment. She was pronounced dead at 7:13 a.m. that morning.

In February 2012, Cynthia Frazier's husband, William Frazier, filed this wrongful-death lawsuit in his capacity as administrator of Cynthia Frazier's estate and on behalf of her wrongful-death beneficiaries. Baptist answered and cross-claimed against Cassandra Johnson, contending that her negligence proximately caused Frazier's death. In May 2014, appellant Elizabeth Ann Williamson was substituted as administrator of her mother's estate. Shortly thereafter, she filed a first amended wrongful-death complaint.

The case proceeded to a jury trial. During voir dire, Williamson's counsel informed the jury that she had settled her claims against Cassandra Johnson for $10. Thus, the case centered on whether any negligence by Baptist proximately caused Frazier's death. The essence of Williamson's case against Baptist was that it had breached its duty of care to Frazier by failing to meet and use ordinary care in maintaining its premises. Specifically, Baptist should have taken measures to make the mandatory crossing of Emergency Drive

SLIP OPINION

safe for its employees. Alternatively, Baptist attempted to prove that it was actually the negligence of Cassandra Johnson and Cynthia Frazier that caused Frazier's death.

The case was submitted to the jury on interrogatories. During deliberations, the jury posed several written questions to the court. The jury expressed confusion regarding whether it was assessing damages against all parties or merely Baptist. Nevertheless, the jury ultimately rendered a verdict and apportioned fault for Cynthia Frazier's death between Baptist, Cassandra Johnson, and Cynthia Frazier. The jury determined that they were 20%, 62%, and 18% at fault, respectively. It awarded the estate of Cynthia Frazier $72,400, and it awarded each of her three daughters and wrongful-death beneficiaries $250,000. The effect of the jury's answers to interrogatories was such that Baptist was responsible for 20% of the damages awarded by the jury. The jury's verdict was memorialized in a judgment entered on August 15, 2014.

Following the entry of the judgment, Williamson filed a motion for a new trial on August 25, 2014. Attached to her motion were the affidavits of four jurors attesting that they intended for the amounts listed on the verdict forms to represent Baptist's share of the liability as opposed to the total amount of damages to which Williamson was entitled. Williamson also attached a photograph of the whiteboard from the jury-deliberation room, which she contends showed that the jury did not consider all elements of damages when awarding damages to Frazier's estate. Baptist opposed the motion for a new trial. On September 24, 2014, Williamson's motion was deemed denied, and her timely notice of appeal followed.



On appeal, Williamson challenges the circuit court's judgment and its denial of her motion for a new trial. She contends that (1) the jury improperly omitted loss-of-life damages in its award to Frazier's estate, (2) the jury's award was inadequate considering the loss-of-life damages sustained by Frazier's estate, (3) the circuit court abused its discretion by substituting its own verdict in place of the jury's verdict, and (4) the judgment entered grants Baptist an unconscionable quadruple reduction in its liability.[1]

## II. Standard of Review

The issues appealed in this case are primarily issues of damages. Thus, we reverse the circuit court's denial of the motion for a new trial only if the court's ruling was a clear and manifest abuse of discretion. *Depew v. Jackson*, 330 Ark. 733, 957 S.W.2d 177 (1997).

## III. The Omission of Loss-of-Life Damages

For her first point on appeal, Williamson argues that the jury improperly omitted loss-of-life damages in its award to Frazier's estate. Arkansas Code Annotated section 16-62-101(b) (Repl. 2005) establishes that "a decedent's estate may recover for the decedent's loss of life as an independent element of damages." Our case law provides that loss-of-life damages are awarded for damages suffered by the decedent and seek to compensate a decedent for the loss of the value that the decedent would have placed on his or her own life. *See One Nat'l Bank v. Pope*, 372 Ark. 208, 272 S.W.3d 98 (2008); *Durham v. Marberry*, 356 Ark. 481, 156 S.W.3d 242 (2004).

---

[1] Additionally, Baptist cross-appealed several evidentiary rulings made and jury instructions given by the circuit court. Baptist asked this court to consider its cross-appeal only if the case was reversed and remanded for a new trial on direct appeal. Because we conclude that the case should be affirmed on direct appeal, we do not reach the merits of Baptist's cross-appeal.

SLIP OPINION

Williamson sought damages on behalf of her mother's estate for funeral expenses, medical expenses, disfigurement prior to death, and loss-of–life damages. Cynthia Frazier's medical and funeral expenses were approximately $12,000, and there was evidence regarding her disfigurement from witnesses at the scene of the collision. To support the estate's claim for loss-of-life damages, Williamson put on evidence that Cynthia Frazier was a fifty-eight-year-old woman in good health who loved her job and her life. Williamson also had an economist present testimony on her future earning capacity had she not died. In all, Williamson sought approximately $335,000 in damages on behalf of the estate, and the jury awarded $72,400.

Williamson predicates her argument that the jury omitted loss-of-life damages from its award on the fact that she considers the amount awarded was so low because it was based on the evidence presented; therefore, the jury could not have considered this element of damages. Specifically, she argues that, based on the overwhelming evidence about the value Cynthia Frazier placed on her life, the jury could not have accounted for this component of loss-of-life damages when making its award to her estate. In support of her argument, she mentions that the whiteboard used by the jurors indicated that they considered only Frazier's income and expenses when awarding damages to the estate. The circuit court acknowledged that this whiteboard was exclusively in the jury's control; nevertheless, it refused to consider the jury's markings as evidence. Our law is clear that, "upon inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent

from the verdict or indictment." Ark. R. Evid. 606(b) (2015). We conclude that the markings on the deliberation-room whiteboard cannot factor into our analysis.

Without those markings, there is no evidence to support Williamson's argument that the jury did not consider loss-of-life damages. The mere fact that the amount of money awarded was lower than requested does not indicate that the element of damages was not considered. Jurors are free, and in fact compelled, to consider all evidence in light of their own observations and experiences in the affairs of life. AMI Civ. 104 (2015). Jurors are the sole judges of the weight of the evidence and the credibility of the witnesses. AMI Civ. 105 (2015). It is improper for this court to question the jury's weighing of the evidence. *Blake v. Shellstrom*, 2012 Ark. 428, 424 S.W.3d 830. This is especially true where, like here, "damages [a]re awarded on a general-verdict form," as the court "has no means to understand the jury's calculation of damages." *Id.* at 11, 424 S.W.3d at 837. We conclude that the circuit court did not abuse its discretion in refusing to grant a new trial on this issue.

*IV. The Inadequacy of the Award to Frazier's Estate*

In Williamson's second point she contends that even if the jury properly considered loss-of-life damages, this court must still reverse the jury's verdict based on the shockingly inadequate award of damages to the estate. We disagree. The jury awarded more than $60,000 in damages to the estate above Cynthia Frazier's medical and funeral expenses. This is markedly different from the cases cited by Williamson in her brief where jury verdicts were overturned because either the jury awarded no damages when it was conceded that damages were incurred or where the amount of damages assessed was less than the stipulated amounts of medical and funeral expenses. *See Bruce v. Hancock*, 2010 Ark. App. 171, 374



S.W.3d 138; *see also Hamilton v. Russell*, 307 Ark. 478, 821 S.W.2d 35 (1991). We hold that the circuit court did not abuse its discretion in refusing to set aside the jury's award as inadequate.

### *V. The Jury's Verdict*

Williamson's third point on appeal relates to whether the circuit court substituted its own verdict for the jury's verdict when it entered the judgment in this case. Williamson's argument is based on the notion that when the jurors awarded damages in this case, they reduced the amount to what they believed Baptist owed instead of awarding a total amount of damages that the court would then reduce based on the percentage of liability attributable to Baptist.

To fully understand this issue, we must examine the interrogatories and verdict forms used in this case. First, the jury was charged to answer whether it found Cassandra Johnson, Baptist, and/or Cynthia Frazier negligent and to apportion fault between them. Then, Interrogatory No. 5 required the jury to state the "*amount of damages*, if any, which you find from the preponderance of the evidence were *sustained by the Plaintiff* in this case." (Emphasis added.) The purported confusion asserted by Williamson comes from the usage of Jury Instruction No. 22 which provides in pertinent part:

> If you decide [sic] Elizabeth Ann Williamson, as Administrator of the Estate of Cynthia Frazier, deceased, and on behalf of the Wrongful Death Beneficiaries of Cynthia Frazier on the question of liability against any party she is suing, *you must fix the amount of money that will reasonably and fairly compensate* Elizabeth Ann Williamson, Emily Blohm, and Katherine Frazier, and the Estate *for those elements of damage sustained which were proximately caused by the negligence of Baptist Health Medical Center.*

(Emphasis added.)

Williamson argues that it is clear that the jury intended for Baptist to pay the entire amount of damages assessed and that the judgment in this case should have reflected that. It is her contention that the jurors read and complied with Jury Instruction No. 22 when it completed the interrogatories and that the amount of damages entered in Interrogatory No. 5 was the amount of damages the jury assessed against Baptist. In support of her argument, she highlights that the jury posed several written questions to the court during deliberations that indicated their confusion regarding whether they were assessing damages against all parties or merely Baptist.

Arkansas courts strictly adhere to the rule that a jury's verdict is complete upon the jury's discharge. Ark. Code Ann. § 16-64-119(d)(2) (Repl. 2005); s*ee also Spears v. Mills*, 347 Ark. 932, 69 S.W.3d 407 (2002). As such, the time to correct or clarify a verdict based on the jury's misunderstanding of the instruction is before the jury is discharged, and the failure to object to a verdict irregularity prior to the discharge of the jury constitutes a waiver of that irregularity. *Spears*, 347 Ark. 932, 69 S.W.3d 407. The judgment reflects the jury's decision as it was shown in its interrogatories. Any argument regarding a potential misunderstanding or irregularity in the jury's verdict was waived upon the jury's discharge. *Id*. Because the judgment reflects the jury's verdict as it was shown in the interrogatories, we hold that the circuit court did not substitute its verdict for that of the jury's.

We now turn our attention to whether the circuit court should have considered the juror affidavits attached to Williamson's motion for a new trial. Whether the circuit court properly refused to consider the juror affidavits hinges on the meaning and interpretation of Arkansas Rule of Evidence 606(b). Rule 606(b) provides that

8

upon an inquiry into the validity of a verdict . . . a juror may not testify as to any manner or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict . . . nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received, but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

The purpose of Rule 606(b) is to balance the freedom of the secrecy of jury deliberations with the ability to correct an irregularity in those decisions. *Blake*, *supra*. The rule discourages harassment by losing parties attempting to set aside the verdict; encourages free and open discussion among jurors; reduces incentives for jury tampering; promotes verdict finality; and maintains the viability of the jury as a judicial decision-making body. *Id.* Our courts have strictly interpreted Ark. R. Evid. 606(b) to mean that "a court should not consider an affidavit wherein a juror attempts to relate the reason behind the jury's damage award." *Bingham v. City of Jonesboro*, 89 Ark. App. 120, 123, 201 S.W.3d 1, 2–3 (2005) (citing *Machost v. Simkins*, 86 Ark. App. 47, 158 S.W.3d 726 (2004)).[2] The circuit court did not abuse its discretion in refusing to consider the juror affidavits attached to Williamson's motion for a new trial.

---

[2] We note Williamson's argument that federal courts have interpreted Federal Rule of Evidence 606(b) to allow juror affidavits similar to the ones presented in this case. *See, e.g., McCullough v. Consolidated Rail Corp.*, 937 F.2d 1167 (6th Cir. 1991); *Karl v. Burlingame N. R.R. Co.*, 880 F.2d 68 (8th Cir. 1989). Arkansas Rule of Evidence 606(b) is identical to Federal Rule of Evidence 606(b), and where Arkansas's court rules are based on existing federal rules, Arkansas courts "consider the interpretation of these rules by federal courts to be of significant precedential value." *Smith v. Washington*, 340 Ark. 460, 10 S.W.3d 877 (2000). Nevertheless, our supreme court's position on this issue is clear, and it is inappropriate for this court to extend the reach of Ark. R. Evid. 606(b).



*VI. An Unconscionable Quadruple Reduction in Recovery*

As a final argument on appeal, Williamson asserts that the judgment entered by the circuit court was a quadruple reduction of Baptist's liability. She contends that this exponential reduction in liability amounts to a windfall to Baptist that must be set aside. She references the well-settled law that double recoveries are unconscionable under Arkansas law. *See Regions Bank v. Griffin*, 364 Ark. 193, 217 S.W.3d 829 (2005). By way of analogy, she contends that it is error to enforce an interpretation of a judgment that leads to an unconscionable result.

There is no evidence of a quadruple reduction in damages. The judgment reads just as the jury answered the interrogatories posed to it. Without evidence that the jury's verdict was reduced, there cannot be an unconscionable result, and we affirm on this point.

VII. *Conclusion*

We affirm this case on all points on Williamson's direct appeal.

Affirmed.

ABRAMSON and BROWN, JJ., agree.

*Appellate Solutions, PLLC*, by: *Deborah Truby Riordan*; *Law Offices of Eric D. Wewers, PLLC*, by: *Eric D. Wewers*; and *Rochelle & McCullough, LLP*, by: *Greg Bevel*, pro hac vice, and *Kathryn Reid*, pro hac vice, for appellant.

*Munson, Rowlett, Moore & Boone, P.A.*, by: *Bruce Munson*, *Jane M. Yocum*, and *Ashleigh Phillips*, for appellee.