Cite as 2020 Ark. 202

# SUPREME COURT OF ARKANSAS
**No.** CR-18-982

| | |
|---|---|
| | **Opinion Delivered:** May 21, 2020 |
| JARELL DAVIS TERRY<br>APPELLANT | |
| | APPEAL FROM THE DREW<br>COUNTY CIRCUIT COURT<br>[NO. 22CR-18-3] |
| V. | |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE SAM POPE, JUDGE |
| | AFFIRMED. |

**KAREN R. BAKER, Associate Justice**

This appeal returns after our remand in *Terry v. State*, 2019 Ark. 342 (*Terry I*). Appellant, Jarell Davis Terry, was found guilty by a Drew County Circuit Court jury of first-degree murder, aggravated robbery, and theft of property. Terry was sentenced to life imprisonment for first-degree murder, life imprisonment for aggravated robbery, and fifteen years' imprisonment for theft of property. Terry argues three points on appeal: (1) substantial evidence does not support his convictions; (2) the circuit court abused its discretion on a juror-misconduct allegation; and (3) the record was inadequate on jury questions during deliberations. We affirm for the reasons that follow.

## I. *Procedural History*

Terry's convictions and sentences stem from the November 14, 2017 theft, robbery, and murder of Christon Sheets. The State charged Terry and his accomplice, Dominze

Figures, with first-degree murder, aggravated robbery and theft of property.[1] At Terry's jury trial, State's witness Mistie Pamplin testified that she was Sheets's girlfriend and the two lived together in Wilmar. Pamplin testified that on November 14, 2017, Sheets drove to McGee, picked up Figures and Terry and brought them back to their house. Pamplin testified that Sheets had approximately one pound of marijuana and two guns at the house. Pamplin testified that the group spent the day smoking marijuana and playing dominoes and video games. Pamplin testified that there was a bag of marijuana on the top bunk bed and some in a jar on the floor. Pamplin further testified that while they were smoking, Terry and Figures were holding Sheets's guns—Terry held the black one and Figures held the brown one. While standing in the doorway and each holding one of Sheets's guns, Figures pointed the gun at Pamplin and Sheets and said, "[Y]ou know what this is[.]" Pamplin stated that Terry was also pointing a gun at Pamplin and Sheets when this statement was made. Pamplin testified that Sheets jumped up and began fighting with Terry. Pamplin further stated that as the two began fighting, she ducked her head and heard a gunshot. Pamplin looked up to see that Sheets had been shot, but she did not see who had pulled the trigger. Pamplin testified that Sheets was on the floor and asked Pamplin to take him to the hospital and Terry responded, "[B]itch, you better not." Pamplin testified that the two men took Sheets's guns and "the bag of weed off the top bunk" and fled the scene. Sheets died from his gunshot injuries.

Dr. Stephen Erickson, Deputy Chief Medical Examiner at the Arkansas State Crime Lab, testified that Sheets's cause of death was due to gunshot wounds to his abdomen and

---

[1]Terry filed a motion to sever his trial from Figures's trial, which was granted.

2

pelvis. At the close of the State's evidence, Terry moved for a directed verdict on each count. The circuit court denied Terry's motion.

Terry testified in his own defense. Terry testified that he and Figures were simply going to Sheets's house to hang out for the weekend and there was no discussion of an illegal plan. The group arrived at Sheets's house at around 1:00 p.m., smoked weed, played dominoes and video games, and ate pizza. Terry testified that later that evening, approximately two minutes before the shooting, he picked up one of the rifles while Figures had the other rifle. However, Terry testified that he gave the rifle back to Sheets, who placed the rifle in his own lap. Terry stated that prior to the shooting, Figures was acting different. Terry further stated that at the time of the shooting, he did not have the rifle in his hand. Terry testified that when Figures stood up and said, "you know what this is," Sheets jumped up and tackled Terry, and the two began wrestling. When Sheets jumped up, the gun fell to the floor. Sheets pinned Terry to the ground, picked up the gun, and pointed it at Figures. Terry heard gunshots and realized that he had been shot in the ankle. Terry testified that Figures instructed him to grab the marijuana and the gun. Terry complied and took the marijuana and the gun as they left Sheets's home. Terry testified that Pamplin was screaming, and he told her to shut up, but he denied pointing a gun at her and did not say "bitch you better not." Terry testified that he and Figures fled and got into a getaway car driven by Figures's girlfriend, which Terry claimed he knew nothing about.

At the close of the evidence, Terry renewed his motions for directed verdict on all counts, which was again denied except that the circuit court granted the motion as to the intentional-killing formulation of first-degree murder. Terry was found guilty of first-

3

degree murder, aggravated robbery, and theft of property. The jury sentenced Terry to two terms of life imprisonment and one term of fifteen years' imprisonment and recommended that the terms run consecutively. The circuit court entered its judgment and commitment order consistent with the jury's recommendation except that it ran the fifteen-year term concurrent with the second life sentence. This appeal followed.

## II. *Points on Appeal*

### A. Sufficiency of the Evidence

For his first point on appeal, Terry argues that the circuit court erred in denying his motion for directed verdict. On appeal, Terry argues that there was insufficient evidence to sustain his convictions of first-degree murder, aggravated robbery, and theft of property. On appeal, a motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *Reynolds v. State*, 2016 Ark. 214, 492 S.W.3d 491. This court views the evidence in the light most favorable to the State and affirms if there is substantial evidence to support the verdict. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.* This court does not weigh the evidence presented at trial or assess the credibility of the witnesses, because those are matters for the fact-finder. *Id.* The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.* Only evidence supporting the verdict will be considered. *Leaks v. State*, 345 Ark. 182, 45 S.W.3d 363 (2001).

With these standards in mind, we turn to Terry's sufficiency argument. A person commits murder in the first degree if

[a]cting alone or with one (1) or more other persons, he commits or attempts to commit a felony, and in the course of and in the furtherance of the felony or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life[.]

Ark. Code Ann. § 5-10-102(a)(1)(B) (Supp. 2019). Further, we have "consistently defined circumstances manifesting extreme indifference to the value of human life as deliberate conduct that culminates in the death of another person. *Jefferson v. State*, 372 Ark. 307, 276 S.W.3d 214 (2008); *Wyles v. State*, 368 Ark. 646, 249 S.W.3d 782 (2007); *Branstetter v. State*, 346 Ark. 62, 57 S.W.3d 105 (2001); *Coulter v. State*, 343 Ark. 22, 31 S.W.3d 826 (2000); *Davis v. State*, 325 Ark. 96, 925 S.W.2d 768 (1996). We have also stated that extreme indifference requires actions that evidence a mental state on the part of the accused to engage in some life-threatening activity against the victim. *Perry v. State*, 371 Ark. 170, 264 S.W.3d 498 (2007)." *Price v. State*, 373 Ark. 435, 439, 284 S.W.3d 462, 465–66 (2008).

With regard to aggravated robbery, a person commits aggravated robbery if he or she commits robbery as defined in § 5-12-102, and the person is armed with a deadly weapon. Ark. Code Ann. § 5-12-103(a)(1). A person commits robbery if, with the purpose of committing a felony or misdemeanor theft, he or she employs or threatens to immediately employ physical force on another person. Ark. Code Ann. § 5-12-102(a)(3). "A criminal defendant's intent or state of mind is seldom capable of proof by direct evidence. *Robinson v. State*, 353 Ark. 372, 108 S.W.3d 622 (2003). Intent to commit a robbery may be inferred from the facts and circumstances of the case. *Jenkins v. State*, 350 Ark. 219, 85 S.W.3d 878 (2002)." *Jefferson v. State*, 359 Ark. 454, 464, 198 S.W.3d 527, 532–33 (2004). Further, theft of property occurs when a person takes unauthorized control over the property of another person with the purpose of depriving the owner of the property. Ark. Code Ann. § 5-36-

5

103(a)(1). Finally, an accomplice is one who directly participates in the commission of an offense or who, with the purpose of promoting or facilitating the commission of the offense, aids, agrees to aid, or attempts to aid the other person in the planning or committing of the offense. *See* Ark. Code Ann. § 5-2-403(a)(2).

Based on the evidence presented at trial, we hold that sufficient evidence supported Terry's conviction for first-degree murder arising out of the shooting of the aggravated-robbery victim, Sheets. Pursuant to Pamplin's testimony, when Figures pointed his gun at Sheets and Pamplin and stated, "[Y]ou know what this is," Terry also pointed his gun at Pamplin and Sheets. After Sheets was shot and he asked Pamplin to take him to the hospital, Terry told Pamplin, "[B]itch, you better not." Finally, Figures and Terry fled the scene with Sheets's guns and marijuana. Based on the above facts, it was clear that Sheets was killed in the furtherance of the aggravated robbery. Despite Terry's testimony that he acted under duress because he feared Figures, the jury was free to accept or reject his testimony. *See Reynolds, supra.* Viewing the evidence in the light most favorable to the State, we hold that substantial evidence supports Terry's first-degree-murder, aggravated-robbery, and theft-of-property convictions. In sum, the evidence supports a conclusion that Sheets's death occurred during the commission of an aggravated robbery and theft under circumstances manifesting extreme indifference to the value of human life. Therefore, we hold that Terry's convictions are supported by sufficient evidence. Accordingly, we affirm the denial of his motions for directed verdict as to all three counts.

## B. Juror Misconduct

For his second point on appeal, Terry argues that the circuit court abused its discretion in not allowing him to question a juror regarding her head nod toward the victim's family. After the jury returned its verdicts during the sentencing phase of trial, but prior to the jury being discharged, defense counsel told the circuit court that during the guilt phase, Terry saw a juror nodding at the victim's family before the jury announced its verdicts. Defense counsel stated that he wanted to question the juror, and the circuit court denied this request. The circuit court explained that this issue was first brought to the court's attention during the sentencing phase and that it would not allow the jurors "to be questioned to go behind their verdicts." The circuit court discharged the jury. After the jury was discharged, Terry testified that he saw the juror look at the victim's family and nod her head, as if to assure the family, "[Y]es, we got him." The juror did not speak to anyone. Terry testified that he told his attorney about this as soon as it occurred, which was before the circuit court received the guilty verdicts. The circuit court then questioned two bailiffs, but neither saw the juror look or nod at the victim's family. Both the prosecutor and the judge stated that they did not see the juror nod at anyone but that they were not paying attention to the jury when it entered the courtroom. On appeal, Terry argues that even if this issue is not preserved, we can address it under our Rule 4–3(i) review.

In response, the State argues that because this argument was not raised at the first opportunity, Terry is barred from raising it on appeal. With regard to Rule 4–3(i), the State properly points out that the Rule does not mandate plain-error review. The record demonstrates that at trial, Terry did not raise this issue at the first opportunity, and therefore,

7

it is not preserved for our review. Further, while we are required by Rule 4–3(i) to review the record for error in life and death cases, that review presupposes that a proper objection was made at trial. *Miller v. State*, 942 S.W.2d 825, 328 Ark. 121 (1997) (explanation of the scope of our review under the Rule's previous designation of Ark. Sup. Ct. R. 4-3(h)).

Here, the alleged juror misconduct occurred after the jury had reached its verdicts in the guilt phase. However, Terry did not notify the court until the jury was deliberating Terry's sentence, and the issue was not objected to on a timely basis and was not preserved for review. Despite preservation, Terry contends that the juror may have known the victim's family and may have prejudiced him. Terry makes bare allegations and offers no evidence to support these allegations. "Following allegations of juror misconduct, the moving party bears the burden of proving that a reasonable possibility of prejudice resulted from any such juror misconduct. *Dillard v. State*, 313 Ark. 439, 855 S.W.2d 909 (1993); *Larimore v. State*, 309 Ark. 414, 833 S.W.2d 358 (1992). We will not presume prejudice in such situations. *Id.*" *State v. Cherry*, 341 Ark. 924, 930, 20 S.W.3d 354, 358 (2000). Here, the alleged nod occurred just as the guilt-phase verdicts were being rendered. Terry does not allege misconduct during deliberations. Additionally, Terry offers no corroborating evidence to support his allegations. "[T]his court has repeatedly held that the issue of witness credibility is for the trial judge to weigh and assess. *Green v. State*, 334 Ark. 484, 978 S.W.2d 300 (1998); *Myers v. State*, 333 Ark. 706, 972 S.W.2d 227 (1998). Accordingly, this court will defer to the superior position of the trial court to evaluate the credibility of witnesses. *Humphrey v. State*, 327 Ark. 753, 940 S.W.2d 860 (1997)." *Id.* at 930–31, 20 S.W.3d at358. Based on the record before us, Terry has failed to demonstrate that juror misconduct

occurred and that he was prejudiced. Accordingly, we are not persuaded by Terry's argument and affirm the circuit court's order on this point.

### C. Inadequate Record on Jury Questions During Deliberations

For his third point on appeal, Terry contends that the record is inadequate on two jury questions posed through notes to the court during deliberations. Terry asserts that because the record is incomplete, the State could not meet its burden of rebutting the presumption of prejudice. Accordingly, Terry contends that his convictions and sentences must be reversed for a new trial.

At issue are two notes. The first jury note is marked "Court's Exhibit 1" and states: "We need the Laws for the accessory [sic] to the crime! We need a clarification for the Statue [sic] of first degree murder." The second jury note is marked "Court's Exhibit 2" and states: "All New Verdict Forms." In *Terry I*, we remanded the matter to the circuit court to settle the record regarding the two notes. We held that

> due to the lack of a verbatim record—when the circuit court ordered the jury notes marked as court's exhibits and received the jury notes into evidence—it is impossible to determine whether Terry and his counsel were present. Likewise, we are unable to determine compliance or noncompliance with section 16-89-125(e). Accordingly, pursuant to Rule 4(a) of the Arkansas Rules of Appellate Procedure –Criminal and Rule 6(e) of the Arkansas Rules of Appellate Procedure –Civil, we remand the matter to settle the record. Under Rule 6(e), the circuit court may settle any difference that 'arises as to whether the record truly discloses what occurred in the circuit court.' The rule further provides that the circuit court can correct omissions from the record by error or accident or misstatements therein. *See McGehee v. State*, 328 Ark. 404, 943 S.W.2d 585 (1997). Here, the circumstances and discussions surrounding the jury notes are unclear.

*Terry I*, 2019 Ark. 342, at 6–7.

After remand, the circuit court conducted a hearing on December 17, 2019, to settle the record. At the hearing, Terry's trial counsel, Mr. Joe Mazzanti, testified that the first

9

note concerned the definition of accomplice liability. Mazzanti testified that he did not remember the jury returning to the courtroom when the note was sent out to the judge. Mazzanti further testified that

> [i]f I recall correctly, there was a knock at the door and the bailiff took the note, or the jury may have asked a question or wanted to ask a question. They were told to put it in writing. And they put it in writing, submitted it to the bailiff. The bailiff took it to the judge. And at some point, the Judge and us attorneys got together. We certainly had an opportunity to look at the note. . . . The question concerned the definition of accomplice liability, which was contained in the jury instructions. And I believe that that was just a general consensus that what they needed were the jury instructions. And all the parties -- And all the attorneys and the Court agree to just send the instructions back to the jury.

Additionally, Mazzanti testified that he believed Terry was in the courtroom during deliberations. Mazzanti also testified that the "attorneys and the court agreed to just send the instructions back." Additionally, Mazzanti agreed that his recollection was that the proper response to the first note was to send printed copies of the instructions to the jury. Mazzanti further agreed that providing the jury instructions to the jury adequately informed the jury of the issues it was inquiring about regarding the first note. With regard to the second note that stated, "All New Verdict Forms," Mazzanti testified, "I vaguely remember us wondering why they needed new verdict forms. But I just don't recall there being much conversation, much discussion about that. But I believe we just agreed that a new set of verdict forms would be submitted to them." Mazzanti further testified that although he did not have a specific memory about the second note, he stated that "it's my practice, when we do have a discussion about something or there is a note that comes back from the jury. I go back to my client and explain to him what the note said and tell him how we responded

10

or how it was responded to." In sum, Mazzanti agreed that the jury requested another set of instructions and that they wanted new copies of the verdict forms.

The bailiff, Mr. James Lee, testified that two notes were sent out from the jury and that there was no other contact from the jury. He believed that the judge was still on the bench when the first note was sent out to the court. Lee testified that the attorneys conferred about the first note, but he was not privy to their discussions. Lee testified that the jury was not called back into the courtroom for either the first or the second note.

Terry also testified. He stated that he was in the courtroom when the bailiff presented the first note to the judge. Terry testified that he saw the judge read the note and that he recalled a conference with the judge and attorneys, and the judge said, "[W]e'll tell [the jury] to resort to the instructions." Terry further testified that he was not aware what the conference was about and assumed it was about a separate issue unrelated to the notes. As for the second note, Terry testified that he was unaware of the second note and had not seen the note or known anything about the note.

On December 19, 2019, the circuit court entered its findings of fact, which stated in pertinent part:

> The Court finds that these are the jury instructions delivered to the jury by the Court's Bailiff James Lee at the Court's direction in response to the jury's question, received by the Court at R. 337, said note admitted by the Court as Court's Exhibit One at R. 492. Both trial counsel were shown the note before it was responded to by delivery of the instructions to the jury, did not object, and Mr. Mazzanti conferred with the defendant about the note. Defendant's testimony at the hearing is the note was delivered to the Court in the courtroom while he was present. This was all in the guilt/innocence phase of the trial.

> After the jury found the defendant guilty and the jury was deliberating on the sentence, the Court received from the bailiff. Note Two from the jury. R.373 and R.494. The jury requested new verdict forms in the note. The penalty phase verdict

11

forms furnished by the Court and delivered to the jury are attached to these findings and order as Court's Exhibit One to these findings . They are the-same verdict forms read orally to the jury at trial in blank form. R. 366-367. No other comment was made by the Court to the jury. The Court, nor anyone else, inquired of the jury why they needed new verdict forms. Both counsel saw the note in chambers and neither objected to the verdict forms being duplicated and new forms being provided to the jury as their note requested. Mr. Mazzanti did not recall specifically discussing this with defendant. Defendant said he did not know of the request.

On appeal, Terry asserts that despite the best efforts to reconstruct the record, the supplemental record falls short of meeting his constitutional guarantees to be present at all substantial stages. Terry contends that he was not present at a critical stage in his prosecution because he was not informed of the contents of the first note, and he was not present for the proceedings involving the second note, which both amount to a violation of the critical-stage doctrine. At issue is Ark. Code Ann. § 16-89-125(e) (Repl. 2005), which provides:

> After the jury retires for deliberation, if there is a disagreement between them as to any part of the evidence or if they desire to be informed on a point of law, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of or after notice to the counsel of the parties.

Noncompliance with Ark. Code Ann. § 16-89-125(e) gives rise to a presumption of prejudice, and the State has the burden of overcoming that presumption. *Clayton v. State*, 321 Ark. 602, 906 S.W.2d 290 (1995). The failure of a defendant and his counsel to be present when a substantial step—such as the judge's answering questions of law in the jury room—is taken in a defendant's case results in a violation of the defendant's fundamental right to be present at any stage of the criminal proceeding that is critical to the outcome. *Goff v. State*, 329 Ark. 513, 953 S.W.2d 38 (1997). However, this court has held that strict compliance with the rule was waived where attorneys went with the judge to the jury room, everything that happened was reported in the record, and there was no possibility of

prejudice. *Martin v. State*, 254 Ark. 1065, 497 S.W.2d 268 (1973). In *Bledsoe v. State*, 344 Ark. 86, 39 S.W.3d 760 (2001), we also addressed Ark. Code Ann. § 16-89-125 and held,

> The requirement of section 16-89-125(e) that the judge call the jury into open court to answer any question the jury might have is mandatory. *See Tarry v. State*, 289 Ark. 193, 710 S.W.2d 202 (1986). Noncompliance with this statutory provision gives rise to a presumption of prejudice, and the State bears the burden of overcoming that presumption. *Id.*

> Notwithstanding, in *Martin v. State*, 254 Ark. 1065, 497 S.W.2d 268 (1973), this court held that strict compliance had been waived where the attorneys went with the judge to the jury room, everything that happened was reported in the record, and there was no possibility of prejudice. Likewise, in *Houston v. State*, 41 Ark. App. 67, 848 S.W.2d 430 (1993), the court of appeals rejected the appellant's argument that a mistrial should have been declared after the trial court violated section 16-89-125(e). There, the jury sent the judge a note, asking: "Are we allowed to require drug rehabilitation as part of the sentence?" *Id.* at 71, 848 S.W.2d 430. The trial court answered, "You may make any recommendations you wish. Please keep this note. Jack Lessenberry." *Id.* In finding that this communication was not prejudicial and did not require a mistrial, the court of appeals stated:

>> It was obvious the jury had finished deliberations on guilt by that point and simply wanted to add this condition to appellant's sentence. The record also shows that the court gave notice of the jury's note to defense counsel before the jury returned. Counsel made no motions or objections to the court's response at that time.

> *Id.*

> The situation at issue here is analogous to those in *Martin* and *Houston*. The statements made by the trial court on record indicate that when the jury sent out a question, it was discussed with both attorneys, and on at least one occasion, the attorneys were present with the judge at the jury room door when the jury asked a question. Moreover, the trial court presented the jury's questions to the court reporter so that the information could be transcribed on the record. Appellant never lodged any objection, nor made any claim, that the trial court's actions were prejudicial. Finally, the jury never even sentenced Appellant because they were deadlocked. While it was certainly inappropriate for the trial court to engage in any type of ex parte communication with the jury, the trial court's actions here did not result in prejudice to Appellant.

344 Ark. at 93–94, 39 S.W.3d at 765–66.

Further, in *Atkinson v. State*, 347 Ark. 336, 351–52, 64 S.W.3d 259, 269–70 (2002), the record did not reflect whether or in what manner the circuit court responded or communicated with the jury regarding the jury's request for letters that were not in evidence:

> During the jury's deliberation in the guilt phase, the jury sent a note to the trial court containing two questions: "May we please see the letters written by Carmen to Richard in jail? Also statements to police by Carmen on October One and October Two." After a discussion between the trial court and counsel for the parties, the trial court stated the following: "I'm just going to say that the letters and statements, the written forms, are not in evidence. The spoken word is what they have to consider." When the court asked whether anyone objected to that answer, counsel for the prosecution responded, "no," and counsel for appellant responded, "It's a correct statement of the law."

Because the record was not clear, we remanded the matter to settle the record. The circuit court held a hearing with Atkinson, her counsel and the prosecuting attorney. The appeal returned, and finding no error, we affirmed:

> While the trial court here violated § 16-89-125(e) by communicating with the jury other than in open court, reversal of Atkinson's conviction here, in these particular limited circumstances, is not warranted, because the State clearly rebutted the presumption of prejudice which arose from the violation. The trial court found, without objection by Atkinson, that its communication with the jury was limited to answering the jury's questions via a note, using the language agreed upon by the parties. The record clearly reflects the substance of the trial court's communication with the jury, and the court answered the jury's questions in the manner agreed upon by the parties in open court. Here, the trial court never had any contact with the jury during deliberations, and Atkinson fully agreed with the court and State regarding the answer written on the same note on which the jury had written its questions. In short, the State clearly rebutted the presumption of prejudice which arose from any violation of § 16-89-125(e). To reverse this case on these facts would place form over substance and would in effect adopt a brightline rule which would require an automatic reversal merely by showing § 16-89-125[(e)] had been violated. That is not the rule. Here, the court's communication with the jury was shown not to be prejudicial to Atkinson, and Atkinson made no objection to the contrary. Thus, we affirm the trial court on all points.

*Atkinson*, 347 Ark. at 351–52, 64 S.W.3d at 269–70.

Here, the record demonstrates that during deliberations, the jury sent out two notes. The supplemental record establishes that these two notes were the circuit court's only communications with the jury. Further, the supplemental record demonstrates that the circuit court found that the jury instructions and verdict forms that the jury received in response to its questions were part of the record and made part of the supplemental record. Also, Mazzanti testified that he believed that the first note only sought jury instructions and the second note sought new verdict forms. Further, the supplemental record demonstrates that when the jury posed the two questions, the circuit court met with the prosecutor and Mazzanti and the parties agreed on a response to the jury. Based on the discussion above, while it evident that the circuit court did not comply with Ark. Code Ann. § 16-89-125(e), we hold that the State has rebutted the presumption of prejudice in this case. Mazzanti was aware of the notes and agreed with the responses to the notes. Therefore, the presumption has been rebutted. Finally, with regard to Terry's argument that a critical-stage violation occurred when he was not present for the second note, this argument is separate from the critical-stage argument and based on the record, Terry did not preserve this issue for review. Similarly, Terry argues that although he was present for the first note, his right to be present was violated because he was not shown the contents of the note, nor was the note read aloud in open court. However, Terry does not cite authority for this argument and the issue was not preserved for our review. Accordingly, based on our discussion above, while the circuit court failed to comply with Ark. Code Ann. § 16-89-125, the State has rebutted the presumption of prejudice and we do not find reversible error. Therefore, we affirm the circuit court's order on this point.

III. *Rule 4-3(i) Review*

This case involves a sentence of life imprisonment; therefore, it is subject to review under Arkansas Supreme Court Rule 4–3(i). As required under Ark. Sup. Ct. R. 4–3(i), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Terry, and no prejudicial error has been found.

Affirmed.

WOOD, J., concurs.

*Cullen & Co., PLLC*, by:  *Tim Cullen*, for appellant.

*Leslie Rutledge*, Att'y Gen., by:  *Adam Jackson*, Ass't Att'y Gen., for appellee.